**AMF TUBESCOPE COMPANY and Liberty Mutual Insurance Company, Petitioners,**

v.

**Don Edwin HATCHEL et al., Respondents.**

**No. 47557.**

Supreme Court of Oklahoma.

Feb. 3, 1976.

Crowe & Dasovich by W. Jeffrey Dasovich, Oklahoma City, for petitioners.

James E. Briscoe, Luther, for respondent, Don Edwin Hatchel.

Fenton, Fenton, Smith, Reneau & Moon by Milton R. Moon, Oklahoma City, for respondent, Hartford Acc. and Indem. Co. and/or Twin City Fire Ins. Co.

Wheeler, Parsons, Boone & Carpenter, Oklahoma City, for respondent, Maryland Cas. Co.

BARNES, Justice:

Respondent, Don Edwin Hatchel (hereafter Claimant), was awarded compensation for permanent partial disability to body as a whole from silicosis contracted during employment with AMF Tubescope Company (hereafter AMF). This award, affirmed by State Industrial Court en banc, is presented for review by Petitioners (herein the Respondents).

Claimant was employed by AMF August 16, 1966, and continued until terminating for better employment April 11, 1971. During this period AMF carried the following insurance coverage: Maryland Casualty Company (hereafter Maryland) from 1966 to April 1, 1968; Liberty Mutual Insurance Company (hereafter Liberty) from April 1, 1968, to April 1, 1971; Hartford Accident and Indemnity Company (hereafter Hartford) from April 1, 1971, through April 11, 1971.

Claim for compensation was filed February 28, 1973. Amended claim, filed May 3, 1973, alleged injury and disability from occupational disease contracted during covered employment, and named each of the above as insurance carriers. The amended claim alleged first manifestation of disease in September, 1972, subsequent diagnosis of difficulty as silicosis on December 17, 1972, and oral notice of condition to Respondent's plant manager on December 22, 1972. Claim was filed February 28, 1973, for disability due to occupational disease.

Matters relating to employment, nature of Claimant's work and conditions under which performed, exposure to silicon dioxide during employment, and contraction of

silicosis as a result of exposure were established by evidence.

After claim was filed, each insurer eventually answered out of time without leave, denying allegations of claim and alleging Claimant's failure to give notice had resulted in prejudice. Maryland and Liberty also alleged the claim was barred by limitations. Hartford presented no issue of statute of limitations until the initial hearing upon the claim. At that time Claimant objected to Respondents' asserting defense of limitations, by reason of failure to comply with Rule 10, State Industrial Court, which requires affirmative defenses to be raised by answer filed within ten days after claim is filed.

The Court withheld ruling upon Claimant's objection and proceeded with the hearing. All Respondents raised defenses of lack of notice and bar of statute of limitations. Ruling was reserved upon demurrers based upon limitations, interposed to Claimant's evidence. The Court sua sponte granted continuance to afford Claimant opportunity to secure further evidence to sustain the burden of proof.

At subsequent hearing the Court ruled the statute of limitations, 85 O.S.1971 § 43,[1] upon which Respondents relied, was inapplicable to this claim, which was governed by § 24[2] of the Act. The Court found the issue concerning which insurer was responsible was determinable under 85 O.S.1971 § 11(3),[3] thus Hartford was the responsible carrier, and others were dismissed. Thereafter, Hartford defended the claim, reserving exception to ruling as to statute of limitations.

Subsequently, the Court filed an order holding the previous adjudication dismissing other insurers was premature, and Liberty was a proper party. Liberty appealed to State Industrial Court en banc upon basis claim was barred by statute of limitations. The appeal was dismissed because not a final order, and the cause returned for further hearing with both Hartford and Liberty defending the claim.

The evidence showed, beginning in 1966, that Claimant worked about a year as a sandblaster cleaning oil field pipe, and thereafter operated a collar machine which sometimes required sandblasting by hand. The work process involved use of an abrasive (Flint #7) containing silicon dioxide particles. Claimant left the collar machine and returned to sandblasting for about six months, then became a lead man readying pipe in an outside yard, which also entailed some sandblasting. Claimant performed the job some three years and was intermittently engaged in sandblasting on breaks and during lunch hours. During the last thirty days' employment, Claimant did no sandblasting, although he was "around" the area where sandblasting occurred. The trial court found that the last exposure was March 11, 1971. We agree that the testimony was not sufficient to establish

---

1. "The right to claim compensation under this Act shall be forever barred unless within one (1) year after the injury or death, a claim for compensation thereunder shall be filed with the Commission. * * * "

2. "Notice of an injury for which compensation is payable under this Act shall be given to the Commission and to the employer within thirty (30) days after injury, unless said injury be an occupational disease, in which case notice of injury shall be given to the Commission and to the employer within eighteen (18) months from date of last hazardous exposure or within three (3) months following the claimant's disablement to which he attributes the cause to be an occupational disease. * * * "

3. "Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefore, without right to contribution from any prior employer or insurance carrier, provided, however, that in the case of silicosis or asbestosis, the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide ($S_1O_2$) dust on each of at least sixty (60) days or more, and the insurance carrier, if any, on the risk when the employee, was last so exposed under such employer. * * * "

exposure during the last thirty days of his employment.

Employment terminated April 11, 1971, and Claimant then began working for Ralston-Purina Company, unloading loose grain with a machine. In July Claimant's chest problems commenced. After a diagnosis and treatment for pneumonia by the family doctor, Claimant was referred to Dr. H.P.R., primarily a heart specialist. This physician saw Claimant December 1, 1971, and secured history of Claimant's work as a sandblaster. Chest X-rays demonstrated infiltrate and possibly fluid in left chest, and indicated need for hospitalization and diagnostic procedures.

A pulmonary specialist (Dr. R.D.) conducted numerous tests and determined blood gases showed marked reduction of blood oxygen. A specialist (Dr. N.Z.) in thoracic surgery was called in to perform an open chest biopsy. Dr. H.P.R. testified the tissue biopsy report provided diagnosis of pneumoconiosis, a class name which includes silicosis. This disease, contracted from inhalation of silicon dust, causes fibrous tissue reaction in the lungs. This interferes with diffusion of oxygen into capillaries, causes decrease in blood oxygen level and arrests arterial oxygen. Scar tissue is formed, and the condition is irreversible.

This, and other medical evidence mentioned later, was introduced by deposition testimony of Dr. H.P.R., who stated Claimant was totally disabled for performance of ordinary manual labor. Claimant was informed of medical diagnosis made on December 17, 1972, and on December 22, 1972, Claimant called and advised Respondent's plant manager he had contracted silicosis. No medical treatment was offered, and Respondents paid no temporary total compensation.

Respondents introduced medical evidence from an examining physician (Dr. C.D.P.), who testified medical findings were appropriate and compatible with diagnosis of simple silicosis. Claimant was considered moderately disabled for any physical exercise, without any prediction as to Claimant's prognosis. A Supplemental Report evaluated Claimant as having 30% permanent partial disability to body as a whole.

The following matters were adjudicated in an order filed April 1, 1974. Claim for compensation for disability from occupational disease was filed February 28, 1973, and Respondents' answers had been filed out of time in violation of State Industrial Court Rule 10. Claimant's last exposure was March 11, 1971, disability commenced when Claimant learned nature of injury on December 17, 1972, and Respondents were given notice December 22, 1972. Claim then was filed within three months following diagnosis of disablement from occupational disease. Maryland was dismissed from responsibility because coverage ceased April 1, 1968, and Hartford was dismissed because coverage was not assumed until April 1, 1971, and there was no exposure from that time until termination of employment. Liberty assumed coverage in 1968 and continued through April 1, 1971, and therefore was the sole insurer under provisions of 85 O.S.1971 § 11(3), supra.

The Court determined Claimant had contracted occupational disease from exposure to silicon dioxide dust. Respondents had notice from Claimant, who filed written notice and claim for compensation for occupational disease within three months prescribed by § 24 of the Act, supra. Compensation was awarded for temporary total disability (53 weeks and 2 days), expenses of necessary medical treatment, and 85% permanent partial disability to body as a whole caused by occupational disease contracted during covered employment with Respondents. Other findings not germane to issues reviewed are omitted. Respondents seek vacation of this order, affirmed by State Industrial Court en banc, upon basis of contentions discussed hereafter.

In view of matters hereafter mentioned, it is unnecessary to consider the issue relating to the trial court's determination that the affirmative defense of limitations

had not been presented, as required by State Industrial Court Rule 10. In this connection, however, attention is directed to recent decisions in *Wood v. Osteopathic Hospital* (Okl.), 512 P.2d 135, and *Cook v. Clinkenbeard* (Okl.), 524 P.2d 27.

Respondents' principal contention urges the claim was barred by the one-year statute of limitations specified by 85 O.S. 1971 § 43, supra, as construed in *Parker v. Blackwell Zinc Co.* (Okl.1958), 325 P.2d 958. Claimant contended that § 43 did not apply where, as here, the claimed injury was an occupational disease, and in that instance § 24 was both a notice statute and a statute of limitations. Respondents' argument evolves from conclusions stated in *Parker,* supra.

We must examine the legislative history of these Acts to determine the correctness of the *Parker* opinion. Section 43 was twice amended by the Legislature in 1953. The first amendment provided for recovery of compensation for specified occupational diseases, and allowed claims to be filed within three years following last hazardous exposure. However, a second amendment increased benefits under § 22, and amended § 43 by re-adoption of the 1951 statute which provided a one-year limitation upon all claims without any reference to occupational diseases. The first amendment amended § 24 by adding provision for occupational disease notice, but the second amendment adopted by the Legislature made no reference to that statute.

Consideration of the limitations set out in § 43 occurred in the *Parker* case, supra. That decision held the first amendment, bearing the three-year limitation, had been obliterated by the second amendment which omitted reference thereto. Therefore, claims for occupational disease were required to be filed within one year from date of last hazardous exposure, under § 43 as amended. This conclusion was reached by application of principles relating to construction of legislative enactments. The decision recognized that omis-

sion of occupational diseases from the last amendment might have been unintentional, in view of provisions in § 24 dealing with occupational diseases having been left unchanged.

The opinion, however, declined to speculate concerning unexpressed Legislature intention in view of "an unequivocal legislative enactment," despite recognition of the remaining ineffectiveness of § 24. The anomaly created by *Parker* arose from the fact that the claim for compensation for disability from occupational disease was held barred after one year after last exposure, although § 24 continued to extend injured workmen a right to give notice by claim for occupational disease within eighteen months following last exposure, or three months following disablement. Clearly the right extended on one hand was taken away by the other.

We erred in *Parker,* supra, when we did not reconcile § 24 with § 43 and give effect, if possible, to both sections, as is required by recognized principles of statutory construction. Legislative intent will be presumed to have been for benefit of those affected, and not to their injury. The Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded. *Independent School Dist. No. JI–69 of Canadian County v. Independent School Dist. No. D–45 of Canadian County* (Okl.), 363 P.2d 835. Statutes must be construed, if possible, so the whole may stand. *Olim v. Mayberry* (Okl.), 524 P.2d 24; *In re Annexation of Part of Stock Dist. No. 10 to Stock Dist. No. 13* (Okl.1960), 347 P.2d 806.

When two acts, or parts of acts, are susceptible of construction which will give effect to both without doing violence to either, this construction should be adopted in preference to one which leads to a conclusion that there is a conflict. *In re Guardianship of Campbell* (Okl.), 450 P.2d 203. In *Eason Oil Company v. Corporation*

*Commission* (Okl.1975), 535 P.2d 283, in syllabus 2 we stated:

"Legislative acts are to be construed in such manner as to reconcile different provisions and render them consistent and harmonious and give intelligent effect to each."

Construction applied to § 43 violated these principles, and by implication would repeal provision of § 24 respecting claims for occupational disease. Repeals by implication are not favored in law. *Wade v. Brown* (Okl.1973), 516 P.2d 526.

Upon re-examination of *Parker,* supra, we are of the opinion that decision was incorrect and the case must be overruled. This conclusion is supported by our decision on second appeal of *Blackwell Zinc Co. v. Parker* (Okl.1965), 406 P.2d 965. Final decision therein was based upon finding the questioned claim had been filed within one year following date of last exposure. However, issue was presented concerning failure to give notice within three months following disablement. The decision recognized continued applicability of § 24 in relation to claims for occupational disease, p. 969, but declared the question as to whether eighteen months was too long was not open to inquiry, since this Court was concerned only with meaning and validity of the statute.

We conclude the State Industrial Court correctly determined the claim now reviewed was not barred by the statute of limitations because filed within three months from date of disablement from occupational disease. In view of this conclusion, we hold that the notice provisions of § 24 are also the limitations provisions for occupational disease.

Respondents' final contention urges Claimant's medical evidence was based upon hearsay and is incompetent, and the only competent medical evidence was that of Respondents. Claimed hearsay results from the fact that, following Dr. H.P.R.'s initial physical examination and X-rays, the doctor's findings indicated need for extensive pulmonary tests.

Medical procedures conducted to diagnose Claimant's condition then were performed by specialists called into the case by Dr. H.P.R. Although hospital and surgical records were not introduced into evidence, the doctor was advised concerning procedures and findings. Whether medical testimony based upon objective findings, communicated to a treating doctor by specialists, is purely hearsay and incompetent, need not be decided.

The issue as to admissibility of testimony, concerning diagnosis made under these circumstances, was removed from the case by other medical opinion. Respondents' expert witness unequivocally established Claimant was suffering from pulmonary difficulties diagnosed as silicosis. The only issue presented by the medical witnesses concerned degree of disability. Respondents' physician estimated 30% permanent partial disability. From medical knowledge concerning effects of silicosis, examination, treatment, and knowledge of Claimant's low blood oxygen, Dr. H.P.R. was of the opinion Claimant was totally and permanently disabled.

Testimony of a physician with limited knowledge and experience in a particular field of medicine does not subject his evidence to rejection when opposed by evidence of a specialist. A physician who possesses sufficient familiarity with the principal subject matter under inquiry to formulate his opinion may give competent medical testimony. *Drinkwater v. Orkin Exterminating Co.* (Okl.), 361 P.2d 834.

Conflicting medical evidence concerning cause and extent of disability presents a fact question for State Industrial Court determination, whose finding will not be disturbed on review. The State Industrial Court is authorized to determine disability at any degree disclosed by evidence of skilled expert witness. Claimant's medical evidence was competent to show degree of disability. See *Raska v. Tulsa Tiling*

*Service* (Okl.), 397 P.2d 661; *Burkan Oil Co. v. Notley* (Okl.), 488 P.2d 1277.

Award sustained.

HODGES, V. C. J., and BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.

WILLIAMS, C. J., and DAVISON, J., concur in result.