Lawrence ANDERSON and Sally B. Anderson, Appellants,

v.

DEPARTMENT OF HUMAN SERVICES OF the STATE of Oklahoma, Appellee.

No. 82904.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 31, 1995.

Rehearing Denied Dec. 26, 1995.

Certiorari Denied April 24, 1996.

Lee M. Holmes, Randall W. Kamp, Lee M. Holmes & Associates, Oklahoma City, for Appellants.

Peggy Beal, Assistant General Counsel, Charles Lee Waters, General Counsel, Department of Human Services, Oklahoma City, for Appellee.

RAPP, Vice–Chief Judge.

The first-impression issue presented here is whether, under the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r–5 (Supp. 1995), Medicaid benefits are available to married couples with some assets but limited income. Trial court plaintiffs, Lawrence Anderson and Sally B. Anderson, appeal the trial court's sustaining the decision by defen-

dant Department of Human Services (DHS) denying plaintiffs Medicaid assistance.[1]

## I. BACKGROUND

Medicaid is a cooperative federal-state endeavor designed to provide health care to needy individuals. If a state chooses to participate, as Oklahoma has chosen to do, it must provide Medicaid coverage to the categorically needy. Eligibility for Medicaid occurs when incurred medical expenses reduce income and assets below certain established levels. States must base assessments of financial need only on resources available to the applicant or recipient. *Trust Co. of Okla. v. State ex rel. Dept. of Human Services*, 825 P.2d 1295 (Okla.1991).

In 1988, Congress enacted the Medicaid Catastrophic Coverage Act "to protect the elderly and disabled population from the financial disaster caused by catastrophic health care expenditures not currently reimbursed under the Medicare and Medicaid programs." H.R.Rep. No. 105(II), 100th Cong., 2d Sess. 65–68 (1988), *reprinted in* 1988 U.S.C.C.A.N. 803, 858. Under prior law, nearly all of a couple's assets had to be depleted before a spouse institutionalized in a nursing home (the "institutionalized spouse") could become eligible for Medicaid, often resulting in the impoverishment of the spouse remaining at home (the "community spouse"). The purpose of the Act "is to end this pauperization by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available to her while her spouse is in a nursing home at Medicaid expense." *Id.* at 888.

Medicaid requires that the nursing home resident be in need to qualify for coverage. An applicant is not eligible to receive Medicaid if his or her financial resources exceed a certain level that, at the time these proceedings arose, stood at $2,000. 42 U.S.C. § 1382 (Supp.1995); DHS Manual § 1231.14 and Schedule I(D) (Revised 1/01/92). However,

Congress provides a special allowance for married couples where one spouse resides in a nursing home. This amount is computed by first establishing the total amount of resources available to the couple during the month the spouse enters the nursing home and dividing by two. 42 U.S.C. § 1396r–5(c) (Supp.1995); DHS Manual § 1254.22(B) (Revised 4/01/90). The institutionalized spouse is then allowed to transfer some or all of his or her share to the community spouse. This amount is known as the "community spouse resource allowance" and is limited to a maximum amount adjusted annually according to the consumer price index. The parties agree that amount stands at $68,700. This amount, then, is the maximum amount that can be transferred from the institutionalized spouse to the community spouse. All other resources above this amount are attributed to the institutionalized spouse. 42 U.S.C. § 1396r–5(f) (Supp.1995); DHS Manual § 1254.22.

## II. FACTS

The facts are not in dispute. Lawrence Anderson (the institutionalized spouse) entered the Alzheimer's Care Center of Oklahoma nursing home. His wife, Sally (the community spouse), continued to reside in the couple's home. The Andersons applied for Medicaid benefits to help pay for nursing home care. DHS determined their income and resources, valuing their total countable resources at $193,433.85.

DHS then divided that total by two, and transferred the maximum amount of $68,700 to the community spouse. The result left the institutionalized spouse with resources exceeding the $2,000 maximum. Thus, benefits were denied on the grounds the institutionalized spouse owned excess financial resources.

The Andersons requested a fair hearing. Following the hearing, a DHS administrative hearing officer denied benefits. A further appeal was made to the DHS director, who also denied benefits. The Andersons filed

---

1. By order of the supreme court, this case is a companion case to case #83,003, *Albert Lacy and Arlene Lacy v. Department of Human Services of the State of Oklahoma* and case #83,888, *Ernest L. Horinek, Personal Representative of the Estate of George E. Horinek, and Agnes C. Horinek v. State of Oklahoma ex rel. Department of Human Services.* Each case proceeded on its own record and was briefed separately, but all three were assigned together for decision.

this action in district court seeking to overturn the DHS decision.[2] The case was remanded to DHS, and ultimately benefits were again denied. The Andersons returned to district court. The trial court denied relief, sustaining DHS' decision denying benefits. The Andersons appeal.

### III. ISSUE

■ There is a single dispositive issue in this appeal—does 42 U.S.C. § 1396r–5(e)(2)(C) allow substitution of resources only after Medicaid eligibility of an institutionalized spouse has been established.

■ The facts are not in dispute. The issue centers on the construction and application of the statute. Thus, the matter is one of law. The appellate court's role is to define the law. Therefore, it independently reviews questions of law. *In re Estate of Crowl,* 737 P.2d 911, 914 (Okla.1987). Because we are here reviewing the action of a state agency relative to its application of a statute, it is worthwhile to review certain fundamental rules of statutory construction. First, the goal is to determine and follow legislative intent, which is presumed to be expressed in the statute. *Darnell v. Chrysler Corp.,* 687 P.2d 132 (Okla.1984). At the same time, if the intent is not clear, the statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded. *AMF Tubescope Co. v. Hatchel,* 547 P.2d 374 (Okla.1976). The legislature will not be presumed to have intended an absurd result by the enactment, and its various provisions will be construed in such a manner as to reconcile them, if possible, "and render them consistent and harmonious and give intelligent effect to each." *Id.* at 380. The United States Supreme Court has long set out the principles followed by our appellate courts in this area. As an example, we note an older case, *Lochner v. New York,* 198 U.S. 45, 64, 25 S.Ct. 539, 546, 49 L.Ed. 937 (1905) (overruled on other grounds), involv-

ing interpretation of a state labor statute, where the court said:

> The purpose of a statute must be determined from the natural and legal effect of the language employed; and whether it is or is not repugnant to the Constitution of the United States must be determined from the natural effect of such statutes when put into operation, and not from their proclaimed purpose.... The court looks beyond the mere letter of the law in such cases. (Citations omitted.)

In a more recent case, the court observed that contested issues of law are reviewable by a de novo standard. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). Additionally, 73 Am Jur.2d *Statutes* § 214 (1974), states:

> [I]n accordance with what is commonly known as the rule of *ejusdem generis,* where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated. (Emphasis added.)

### IV. ANALYSIS

The total amount of resources available for medical eligibility to the institutionalized spouse has been established at $2,000. Resources in excess of this amount disqualify the applicant for medical eligibility.

Examination of the statute under review, 42 U.S.C. § 1396r–5, **Treatment of income and resources for certain institutionalized spouses,** in view of the issue of eligibility and substitution of resources, reveals the following:

---

**2.** "Any applicant or recipient under this title aggrieved by any final decision of the Director may petition the district court in which the applicant or recipient resides for a judicial review of the decision pursuant to the provisions of Sec-

tions 318 through 323 of Title 75 of the Oklahoma Statutes. A copy of the petition shall be served by mail upon the General Counsel of the Department." 56 O.S.Supp.1994 § 168(D).

**(a) Special treatment for institutionalized spouses**

**(1) Supersedes other provisions**

*In determining the eligibility for medical assistance* of an institutionalized spouse....

....

**(b) Rules for treatment of income**

....

**(2) Attribution of income**

*In determining the income of an institutionalized spouse* or community spouse *for purposes of the post-eligibility income* determination described in subsection (d) of this section ... the following rules apply:

....

**(c) Rules for treatment of resources**

**(1) Computation of spousal share at time of institutionalization**

**(A) Total joint resources**

There shall be computed ...

(i) the total value of the resources to the extent either ... spouse has an ownership interest, and

....

**(B) Assessment**

*At the request of an institutionalized spouse or community spouse, at the beginning of the first continuous period of institutionalization* (beginning on or after September 30, 1989) of the institutionalized spouse and upon the receipt of relevant documentation of resources, *the State shall promptly assess and document the total value* described in subparagraph (A)(i) and shall provide a copy of such assessment and documentation to each spouse and shall retain a copy of the assessment for use under this section. *If the request is not part of an application for medical assistance under this subchapter, the State may,* at its option as a condition of providing the assessment, *require payment of a fee not exceeding the reasonable expenses of providing and documenting the assessment. At the time of providing the copy of the assessment, the State shall include a notice indicating that the spouse will have a right to a fair hearing under subsection (e)(2) of this section.*

**(2) Attribution of resources at time of initial eligibility determination**

*In determining the resources of an institutionalized spouse at the time of application for benefits* under this subchapter....

....

**(d) Protecting income for community spouse**

**(1) Allowances to be offset from income of institutionalized spouse**

*After an institutionalized spouse is determined or redetermined to be eligible for medical assistance* ....

....

**(e) Notice and fair hearing**

**(1) Notice**

Upon—

**(A)** *a determination of eligibility* ... or

**(B)** *a request by either* ... *spouse....*

**(2) Fair Hearing**

**(A) In general**

If either ... spouse is dissatisfied with a determination of—

....

such spouse is *entitled to a fair hearing* ... with respect to such determination *if an application for benefits under this subchapter has been made on behalf of the institutionalized spouse....*

....

**(C) Revision of community spouse resource allowance**

If either such spouse establishes ... *there shall be substituted,* for the community spouse resource allowance *under subsection (f)(2) of this section....* (Emphasis added.)

## V. DECISION

The above portions of the statute establish without question the following:

(1) The primary purpose of this statute is set out in the beginning sentence of section (a)(1) stating, "In determining eligibility for medical assistance of an institutionalized spouse." The function of this statute is to determine income and resources *after a determination of eligibility*

of the Medicaid applicant has been made, *i.e.*, does the applicant have resources in excess of $2,000?

(2) Either spouse, institutionalized or community, may, under section (c)(1)(B), request an assessment without requesting Medicaid. Having requested such an assessment without an accompanying application for Medicaid, there does not appear to be any prohibition in the statute under examination preventing asset or resource reallocation between spouses following the assessment.

The statute's plain reading shows, with the exception of that part of the statute dealing with the assessment request available to either spouse without the filing of an application for Medicaid benefits (eligibility), the statute is intended to be an instructive guide on *eligibility* determination. The handling of income distribution or substitution is to be done *after eligibility has been established.* *See* 42 U.S.C. § 1396r–5(b)(2), (d)(1), and (e)(1)(A). Thus, where an applicant has applied for Medicaid, a determination is then made of the applicant's eligibility based upon the established $2,000 resource limit. The applicant meeting the $2,000 criterion will be determined Medicaid "eligible." The applicant who has been denied Medicaid eligibility because the applicant has resources in excess of $2,000 is not then able to rely upon the apparent relief held out in section (e)(2)(C). The reason for this is that this section is available only to a non-Medicaid applicant, under section (e)(1)(B), or an institutionalized spouse determined to be Medicaid eligible on the ground of having resources of $2,000 or less. This eligibility determination of the applicant, based upon his or her application for Medicaid, then restricts the application of section (e)(2)(C) only to post-eligibility situations or to those applicants seeking an assessment but not Medicaid.

Therefore, we are required to hold that the trial court decision is correct, and its decision is AFFIRMED.

GOODMAN, P.J., and STUBBLEFIELD, J., concur.