Dear Senator Rabon
¶ 0 This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Do the provisions of Sections 7-701 through 7-706 of Title 29 of the Oklahoma Statutes, which apply to the McCurtain County Wilderness Area, allow the Department of Wildlife Conservation to cut timber or other plants located on any land within the wilderness area?
 2. Do the provisions of Sections 7-701 through 7-706 of Title 29 of the Oklahoma Statutes, which apply to the McCurtain County Wilderness Area, allow the Department of Wildlife Conservation to conduct prescribed burns on the wilderness area?
 I. Statutory History Of The Wilderness Area
¶ 1 Your questions relate to the McCurtain County Wilderness Area ("Wilderness Area") which is owned by the Oklahoma Department of Wildlife Conservation. The Wilderness Area was purchased by the State in 1918 from the Choctaw and Chickasaw nations and consists of more than 14,000 acres in the Ouachita Mountains of southeast Oklahoma.[1] It is reported that the Wilderness Area is the largest contiguous old-growth pine forest in the eastern United States.[2] In 1951, the area was designated by legislation as a Wilderness Area. See 29 O.S. 1951, ch. 1d, § 1. This legislation provided for restricted access to the Wilderness Area and prohibited mining operations, sand and gravel removal, timber cutting and timber removal. Id.
§ 3. The legislation also provided that the Department of Wildlife Conservation (formerly the Game and Fish Commission) manage the property and specifically stated that the entire Wilderness Area "insofar as is humanly possible, be permitted to remain in a natural state with only nature operating to alter existing conditions." Id.
¶ 2 The legislation remained unchanged from 1951 to 1974; however, in 1971 the statutes were re-codified. See 29 O.S. 1971, §§ 721-724[29-721-724]. In 1974, the statutes relating to the Wilderness Area were significantly amended and again re-codified.See 1974 Okla. Sess. Laws ch. 17, pt. 7, §§ 7-701-7-706. Prior to 1974, the provision stating that the Wilderness Area was to "remain in a natural state with only nature operating to alter existing conditions" applied to the entire area. 29 O.S. 1971, § 723[29-723]. In 1974, the language was amended to apply only to the lands east of Broken Bow Lake.[3] See 1974 Okla. Sess. Laws ch. 17, pt. 7, § 7-701. Most significantly, however, in 1974 the Legislature amended the title of Section 7-704 and added an entirely new provision at Section 7-705. Id. §§ 7-704, 7-705. These changes indicate the Legislature's intent to alter the previously existing manner in which the wilderness area was managed.[4] For the first time the Legislature specifically authorized the Wildlife Department to remove wildlife and plant life from the wilderness area. Id. § 7-705. Section 7-705 provided:
 Section 7-705. Prohibition on removal of wildlife and plants
 A. Except as otherwise provided, no person may collect, remove, lure, chase or cause to be removed, lured or chased any wildlife from the Wilderness Area or collect, remove or cause to be collected or removed any plant life from the Wilderness Area.
B. Persons exempt from the above subsection are:
 1. Departmental employees pursuant to their duties; or
 2. Any person who has obtained prior specific written permission from the Director and who, at the time of such activity, has evidence of that permission upon his person.
 C. Any person convicted of violating the provisions of this section shall be punished by a fine of not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars($100.00).
Id. (emphasis added).
¶ 3 Today, the provisions relating to the Wilderness Area remain the same as in 1974. See 29 O.S. 2001, §§ 7-702-7-706[29-7-702-7-706].
For purposes of this Opinion, the following statutes in Title 29 apply:
¶ 4 § 7-701. Lands contained in the wilderness area
 A tract of land . . . situated in the County of McCurtain, State of Oklahoma, now owned in fee simple by the Department, is hereby designated as a wilderness area. Insofar as humanly possible, those portions east of Broken Bow Lake are to be retained in a natural state with only nature operating to alter existing conditions.
Id.
 ¶ 5 § 7-702. Ingress and egress
 A. Except as otherwise provided, no person may enter any of the wilderness area.
 B. Persons exempt from the above prohibition shall be:
 1. Persons possessing prior written permission from the Department;
 2. Departmental employees directly concerned with the management of the area;
 3. Employees of the Forestry Service directly concerned with the protection of the area from fire; and
 4. Persons concerned with the scientific study of the natural resources of the state, who are authorized by the Department.
 C. Any person convicted of violating this section shall be punished by a fine of not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00), or by imprisonment in the county jail for a period not more than thirty (30) days, or by both such fine and imprisonment.
Id.
 ¶ 6 § 7-703. Prohibition on motor-driven devices within thewilderness area
 A. Except as otherwise provided, no person may use any motor-driven conveyance or devices in any portion of the wilderness area east of Broken Bow Lake.
 B. Those persons exempted shall be those state and federal employees, specified in paragraphs 2 and 3, subsection B of Section 7-702 of this Title, in the performance of their duties.
 C. Any person convicted of violating the provisions of this section shall be punished by the imposition of a fine of not less than One Hundred Dollars ($100.00) nor more than Two Hundred Dollars ($200.00) or by imprisonment in the county jail for a period not to exceed thirty (30) days, or by both said fine and imprisonment.
Id.
 ¶ 7 § 7-704. Prohibition of commercial operations
 A. No person may mine, remove any sand and/or gravel or cut and/or remove any timber in any portion of the wilderness area.
 B. Any person convicted of violating this section shall be punished by a fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for a period not less than ten (10) days nor more than sixty (60) days, or by both such fine and imprisonment.
Id.
 ¶ 8 § 7-705. Prohibition on removal of wildlife and plants
 A. Except as otherwise provided, no person may collect, remove, lure, chase or cause to be removed, lured or chased any wildlife from the wilderness area or collect, remove or cause to be collected or removed any plant life from the wilderness area.
B. Persons exempt from the above subsection are:
 1. Departmental employees pursuant to their duties; or
 2. Any person who has obtained prior specific written permission from the Director and who, at the time of such activity, has evidence of that permission upon his person.
 C. Any person convicted of violating the provisions of this section shall be punished by a fine of not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00)
Id.
 ¶ 9 § 7-706. Prohibition on permanent structures
 With the exception of internal fences and existing Department buildings, no additional permanent structures may be erected or maintained in any part of the wilderness area east of Broken Bow Lake.
Id.
 II. Thinning Of Hardwood Trees In The Wilderness Area
¶ 10 In 1992, the Wildlife Department implemented a management plan for the Wilderness Area.[5] In general, the Management Plan provides for prescribed burns and small-scale thinning of young hardwoods in an effort to maintain the historical ecological resources of the Wilderness Area. Management Plan, at 4, 6, 14. The facts which gave rise to your questions involve the portion of the Management Plan which provides for cutting hardwood trees between 1 and 12 inches diameter at breast height.Id. at 14. Through a grant agreement with the U.S. Fish and Wildlife Service, the Wildlife Department has contracted with an independent contractor to remove hardwood understory vegetation in limited areas located within the Wilderness Area for the past several years.[6] The targeted areas for thinning surround clusters of a federally endangered species commonly known as the red-cockaded woodpecker. See Grant, at 1, 2; see also50 C.F.R. § 17.11(h). Once the media reported the thinning,[7]
state legislators passed a resolution opposing "any action by the Oklahoma Department of Wildlife Conservation that does not follow the strict letter and intent of law protecting this invaluable and unique ecosystem" and also opposing "hardwood tree-cutting of any acreage that has been set aside and protected under existing Oklahoma law." S. Con. Res. 76, 49th Leg., 2d Reg. Sess. (Okla. 2004).[8] The first issue to be addressed, therefore, is whether the Wildlife Department is authorized to cut hardwood trees which encroach upon the pine forest in the Wilderness Area.
¶ 11 The cardinal rule of statutory construction is to ascertain the legislative intent through an examination of the statutory language. Grand River Dam Auth. v. State,645 P.2d 1011, 1018 (Okla. 1982). Legislative intent is ascertained from reading the whole Act, "in the light of the general purpose and object." City of Midwest City v. Harris, 561 P.2d 1357, 1358
(Okla. 1977). Statutes "should be given a sensible construction, bearing in mind the evils intended to be avoided." AMF TubescopeCo. v. Hatchel, 547 P.2d 374, 379 (Okla. 1976).
¶ 12 Section 7-701 provides that "[i]nsofar as humanly possible," the Wilderness Area which lies east of Broken Bow Lake is "to be retained in a natural state with only nature operating to alter existing conditions." 29 O.S. 2001, § 7-701[29-7-701]. The law, however, goes on to provide for several non-natural activities on the area. For instance, Wildlife Department employees are allowed to drive motor-driven conveyances on the area. Id. § 7-703(B). Forestry employees are permitted on the Wilderness Area for the purpose of protecting the area from fire. Id. § 7-702(B)(3). And finally, importantly, Wildlife Department employees, pursuant to their job duties, are permitted to remove plant life and wildlife from the Wilderness Area. Id. § 7-705(B). None of these activities are provided by nature alone — each involves some type of human intervention and management on the area.
¶ 13 Consequently, it cannot be said that the Legislature intends for the Wilderness Area to remain completely free from human intervention. As previously noted, the statutory scheme of the Wilderness Area as a whole must be considered. Likewise, it should be considered in light of the Wildlife Department's mission. The Wildlife Department's statutorily mandated duty is for the "protection, restoration, perpetuation, conservation, supervision, maintenance, enhancement, and management of wildlife in this state." 29 O.S. 2001, § 3-103[29-3-103](A). To protect, restore, perpetuate, conserve, maintain, enhance, and manage wildlife, the Wildlife Department must also necessarily protect, restore, perpetuate, conserve, maintain, enhance and manage wildlife habitat.
¶ 14 In its mission to manage the Wilderness Area, an effort must be made to maintain the unique natural ecosystem. Id. § 7-701. Without exception, people are prohibited from cutting or removing any "timber" from the Wilderness Area. Id. § 7-704(A). But, as mentioned, Wildlife Department employees are specifically authorized to remove "plant life" from the area. Id. § 7-705(B).
¶ 15 Since the statutes prohibit the cutting or removing of "timber" but allow the Wildlife Department to remove "plant life," the distinction between "timber" and "plant life" is crucial in determining the intent of the Legislature. "Words used in any statute are to be understood in their ordinary sense." 25O.S. 2001, § 1[25-1]. The word "timber" commonly refers to wood used as building material. "Timber" is defined as: "1 a (1): growing trees or their wood . . . 2: wood used for or suitable for building (as a house or boat) or for carpentry or joinery . . .4: something that is made of wood or is likened to a wooden object . . . 5 a (1): a comparatively large squared or dressed piece of wood ready for use or forming part of a structure. . . ." Webster's Third New International Dictionary 2394 (3d ed. 1993). On the other hand, the plain meaning of "plant" is much broader. "Plant" is defined as: "1 a (1) :a young tree, vine, shrub, or herb planted or suitable for planting . . .c: any of numerous organisms constituting the kingdom Plantae." [9] Id. at 1730.
¶ 16 The provisions of statutes must, insofar as reasonably possible, be construed so as to promote harmony between them and avoid conflicts or repeals by implication. McNeill v. City ofTulsa, 953 P.2d 329, 332 (Okla. 1998); R.V. McGinnis Theaters Pay T.V. Inc. v. Video Indep. Theatres, Inc.,262 F. Supp. 607, 613-14 (N.D. Okla. 1967) (quoting Forston v. Heisler,341 P.2d 252, 255 (Okla. 1959)). Reading 29 O.S. 2001, §§ 7-704[29-7-704]
and 7-705 together, again in light of the Wildlife Department's purpose to protect, restore, maintain and enhance wildlife, it appears that the Department is prohibited from harvesting timber for any type of commercial purpose, but is not prohibited from removing young trees from the Wilderness Area. Especially when considering that the unintended consequence of the total ban on tree cutting is the inevitable encroachment of hardwoods upon the historically pine-dominant forest, this conclusion additionally fulfills the Legislature's intent for the area to remain, insofar as humanly possible, in a natural condition as existed in 1951 when the area was designated as a Wilderness Area.
¶ 17 In 1974, the Legislature substantially revised the statutes which applied to the Wilderness Area. "[A] change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended. Where the former statute was clear . . ., the amendment may reasonably indicate legislative intent to alter the law." Irwin v. Irwin,433 P.2d 931, 934 (Okla. 1965) (citation omitted). In 1974, the Legislature intended to alter the existing law. Prior to 1974, the Wilderness Area statutes prohibited cutting timber in the Wilderness Area, and no provision of law allowed the Wildlife Department to remove plant life from the area. See 29 O.S. 1971, §§ 721-724[29-721-724]. In 1974, the Legislature amended and re-codified the Wilderness Area statutes to prohibit "commercial operations" on the area. See 1974 Okla. Sess. Laws ch. 17, pt. 7, § 7-704. More importantly, however, the Legislature enacted Section 7-705 specifically authorizing the Wildlife Department to remove plant life from the area. Id. This noticeable alteration in the law supports the conclusion that the Wildlife Department, in fulfilling its duties to maintain the area in a natural state, may thin dense young hardwoods to promote the historical ecosystem.
¶ 18 Therefore, based on the 1974 alterations of existing law, the statutorily authorized non-natural activities which may occur on the area, the title of Section 7-704, the entirety of the Wildlife Department's purpose and mission, and the Legislature's clear mandate that the Wilderness Area be retained in a natural state, we conclude that Section 7-704 prohibits all persons, including Wildlife Department employees, from harvesting timber from the Wilderness Area for sale or use, but Section 7-705 authorizes the Wildlife Department to collect or remove plant life, including young trees, as necessary to preserve the Wilderness Area in a natural state.
 III. The Use Of Prescribed Burning On The Wilderness Area
¶ 19 You next ask about the use of prescribed burns on the Wilderness Area. The importance of fighting fires has been evident from the initial 1951 legislation which, while highly restricting public access to the area, granted access for the purpose of protecting the area from fire. See 29 O.S. 1951, ch. 1d, § 2. That legislation remains today. See 29 O.S. 2001, §7-702[29-7-702](A)(3).
¶ 20 Fire suppression, however, results in an inevitable encroachment of hardwoods upon the old-growth pine forest.[10] Consequently, in recent years, the Wildlife Department has conducted prescribed burns in the area to help reduce the understory hardwoods You ask whether these prescribed burns are authorized by law.
¶ 21 It is lawful for an owner of land to set fires for the purpose of managing unwanted plant life. Title 2 O.S. 2001, §16-24.1, provides in pertinent part:
 A. It shall be lawful for an owner of croplands, rangelands or forestlands to set the croplands, rangelands or forestlands on fire for the purposes of:
 1. Managing and manipulating plant species present whether grass, weeds, brush or trees; and
 2. Destroying detrimental or unwanted plants, plant parts, shrubs or trees on the croplands, rangelands or forestlands.
Id. There is no prohibition on prescribed burns within Title 29. As cited above, Section 16-24.1(A) specifically allows prescribed burning. Therefore, there is no conflict in the law.
¶ 22 Section 7-701 of Title 29 provides that the Wilderness Area east of Broken Bow Lake, "[i]nsofar as humanly possible," is "to be retained in a natural state with only nature operating to alter existing conditions." Fire is a natural phenomenon which occurs in a natural setting. When natural fire is suppressed, however, prescribed burns are used to mimic nature. [11] As discussed in section II above, limited intervention into the management of the Wilderness Area is permitted. In fact, a prescribed burn is one method of management for removing plant life.
¶ 23 As there is no specific prohibition on the use of prescribed burning in the Wilderness Area, we conclude that the Wildlife Department may conduct prescribed burns on both the east and west portions of the Wilderness Area for the purpose of protecting the ecosystem. 29 O.S. 2001, § 7-705[29-7-705](B); 29 O.S.2001, § 3-103[29-3-103](A); 2 O.S. 2001, § 16-24.1.
¶ 24 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Department of Wildlife Conservation is statutorily mandated to protect, restore, perpetuate, conserve, maintain, enhance, and manage wildlife and necessarily by implication, wildlife habitat. 29 O.S. 2001, § 3-103(A).
 2. Title 29 O.S. 2001, § 7-704[29-7-704] prohibits all persons, including Department of Wildlife Conservation employees, from harvesting timber from the McCurtain County Wilderness Area for sale or commercial use, but 29 O.S. 2001, § 7-705[29-7-705] (B) authorizes the Wildlife Department to collect or remove plant life, including young hardwood trees, as necessary to preserve the Wilderness Area in a natural state.
 3. The Department of Wildlife Conservation may conduct prescribed burns on the McCurtain County Wilderness Area for the purpose of protecting the ecosystem. 29 O.S. 2001, § 7-705(B); 29 O.S. 2001, § 3-103(A); 2 O.S. 2001, § 16-24.1.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN ZUMWALT-SMITH Assistant Attorney General
[1] See Okla. Dep't of Wildlife Conservation, McCurtain County Wilderness Area Mgmt. Plan at 2 (1991) [hereinafter Management Plan] (on file with the Oklahoma Attorney General's Office).
[2] Memorandum from the Fish and Wildlife Service, Acting Regional Director, Region 2, to the Fisheries and Federal Aid, Region 2 Assistant Regional Director, (Feb. 28, 1992) [hereinafter Biological Opinion] (on file with the Oklahoma Attorney General's Office).
[3] Approximately 986 acres of the Wilderness Area lie west of Broken Bow Lake with the remaining acres lying east of the lake.See Management Plan, at 1.
[4] The Legislature is never presumed to have done a vain thing. Loffland Bros. Equip. v. White, 689 P.2d 311, 314
(Okla. 1984).
[5] See Biological Opinion; Management Plan.
[6] See Grant Agreement, Aug. 28, 2001, U.S. Fish Wildlife Serv.- Okla. Dep't of Wildlife Conservation, [hereinafter Grant] (on file with the Oklahoma Attorney General's Office); see also
Okla. Dep't of Wildlife Conservation P.O. No. 3209000261 (on file with the Oklahoma Attorney General's Office).
[7] See J.D. Cash, State cutting trees in McCurtain CountyWilderness Area, McCurtain Sunday Gazette-News, May 2, 2004, at 1; Lawmakers question wildlife officials on tree cutting,
McCurtain Daily Gazette, May 14, 2004, at 1.
[8] A concurrent resolution that is not signed by the Governor is not law. Ward v. State, 56 P.2d 136, 137 (Okla. 1936);McAlester v. Okla. Tax Comm'n, 50 P.2d 647, 651 (Okla. 1935).
[9] "Plantae" means "the basic group of living things that comprises all the plants." Id. at 1730.
[10] See Okla. Dep't of Wildlife Conservation, McCurtain County Wilderness Implementation Plan Guidelines at 2-3 (1991) (on file with the Oklahoma Attorney General's Office).
[11] See Terrence G. Bidwell Ronald E. Masters, Okla. State Univ., Using Prescribed Fire in Okla., Circular E-927, at 1 (1994).