2005 OK CIV APP 46

**SEMINOLE FAMILY MEDICINE CLINIC, Plaintiff/Appellee,**

v.

**Teresa J. SOUTHERN, Now Harris, Defendant/Appellant.**

**No. 100,658.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 11, 2005.

192

James A. Choate, Eugene K. Bertman, Nelson & Choate, Oklahoma City, OK, for Plaintiff/Appellee.

Tsinena Bruno, Richard L. Rose, Miller Dollarhide, Oklahoma City, OK, for Defendant/Appellant.

Opinion by CAROL M. HANSEN, Judge:

¶1 Fuerborn & McCrory P.L.L.C., d/b/a Seminole Family Medical Clinic (Clinic) sued Defendant, Teresa J. Southern, now Harris, in small claims court to collect unpaid medical bills on an open account.

¶2 The Joint Narrative Statement reveals Delores Melton, custodian of records for accounts receivable, testified Defendant owed $1,920.00 in unpaid medical bills for services

rendered January through June of 2000. She also testified claims were submitted based on the insurance coverage information Clinic had in Defendant's file, but the claims were rejected. She testified Clinic did not have an updated and accurate insurance card in the file which would provide information necessary to submit claims to Defendant's husband's insurance company, alleged to have provided coverage for her.

¶ 3 Ms. Melton further testified Clinic treated Defendant as private pay and billed her directly. She stated Clinic attempted to contact Defendant several times prior to filing suit, but Defendant did not respond. She further stated that after Clinic filed the lawsuit, Defendant contacted Clinic and provided insurance coverage information for her husband. Clinic also learned the insurer was in receivership.

¶ 4 Defendant testified that in June 2000, she disputed charges on her Clinic account. She testified she spoke with Darlene Cornelius, an office manager, about her bill. Together they found several errors, including dates Defendant was not present but had been billed for procedures she did not receive. Defendant testified Cornelius reported she would handle the errors and Defendant's bill would be taken care of. Pursuant to 12 O.S.2001 § 2804.1, she offered into evidence an affidavit from Ms. Cornelius which supported Defendant's account of events and "would help further explain the bills allegedly owed by [Defendant]." The trial court denied admission into evidence of the affidavit.

¶ 5 Defendant further testified she had previously provided an accurate copy of her insurance card to Clinic and would have provided an additional copy, but Clinic did not request one. She testified she had valid insurance coverage. The trial court entered judgment for Clinic in the amount of $1,370.00, with interest thereon at the rate of 5.01% per annum until paid, plus $98.00 in court costs and attorney fees to be determined upon application. Defendant appeals.

¶ 6 Defendant argues the judgment is void because the real party in interest is an assignee of a claim, and pursuant to 12 O.S. 2001 § 1751(B), "no action may be brought under the small claims procedure by any collection agency, collection agent or assignee of a claim." The record indicates that before the trial, Clinic filed Unopposed Motion to Amend Small Claims Affidavit stating, "Seminole Family Medicine Clinic is a d/b/a of Feuerborn & McCrory, P.L.L.C., who is the plaintiff real party in interest in this matter. The Small Claims Affidavit should therefore be amended to clarify Feuerborn & McCrory, P.L.L.C., as the party plaintiff." Defendant asserts her alleged debt was originated by Dr. O'Keefe, who assigned the claim to his corporation, Seminole Family Medicine Clinic, and Clinic assigned the claim to Feurborn & McCrory, P.L.L.C.

¶ 7 The record is silent regarding the businesses known as Seminole Family Medicine Clinic, "a d/b/a of Feurborn & McCrory, P.L.L.C.," and the circumstances creating Clinic's status as the real party in interest to recover on the account. But, even if the claim against Defendant was assigned to Clinic, it could still have been brought under the small claims procedure. In interpreting the language "assignee of a claim" in § 1751(B), this Court must determine and follow legislative intent, presumed to be expressed in the statute itself. *Darnell v. Chrysler Corp.,* 1984 OK 57, 687 P.2d 132. If the intent is not clear, the statute should be given a sensible construction. *AMF Tubescope Co. v. Hatchel,* 1976 OK 14, 547 P.2d 374. The doctrine of *ejusdem generis* provides that where there are general words in a statute that follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated. *Anderson v. Department of Human Services of State,* 1995 OK CIV APP 136, 916 P.2d 846.

¶ 8 The legislative intent and purpose of the Small Claims Procedure Act, 12 O.S.2001 § 1751, *et seq.,* is to establish an informal court void of rigid restrictions and with little or no regard to technicalities pertaining to rules of evidence and to give to the judge

direct affirmative authority to control all aspects of the hearing with the sole object of dispensing speedy justice between the parties. *Black v. Littleton*, 1975 OK CIV APP 1, 532 P.2d 486.

¶9 An examination of § 1751(B) requires application of the doctrine of *ejusdem generis*. The meaning of a word used in a statute must be construed in connection with the words with which it is associated. *White v. Wint*, 1981 OK 154, 638 P.2d 1109. Thus, the language "assignee of a claim," is restricted to collection agencies and agents who are in the business of collecting debts for others. Additionally, there is no clearly manifested intent that the general language be given a broader meaning. *White v. Wint, supra*. It is not disputed Feurborn is doing business as Clinic, a medical clinic which provides medical services, not a collection agency. This case was properly filed in Small Claims Court.

¶10 Next, Defendant argues the trial court erred in not applying the Oklahoma State Board of Health rule OAC 310:655–25–7, and in not finding her not liable as a covered member for fees for services. Ms. Melton testified Clinic received a letter from the Oklahoma State Department of Health regarding Clinic's collection of "medical bills and charges for covered members of Health Care Oklahoma, Inc." This letter was admitted into evidence. It stated, "We are informed that you have initiated collection action against a former participating or covered member of Health Care Oklahoma, Inc., (HCO) for an unpaid medical service debt." The letter stated the Board of Health rule "requires contracts between HMOs and providers to contain 'hold harmless' language," effectively holding the patient harmless in the event the HMO does not pay, even if the contract expires by operation of law, including bankruptcy. Among other things, the letter stated, "Attached to this letter are the

name(s) of former AmCare members who have contacted the Department regarding your collection efforts. Please immediately cease all efforts to collect charges that are AmCare's responsibility." The attachment to the letter lists Defendant as the member and Clinic as the provider. The attachment also states, "Member's eligibility has been confirmed with the employer groups, Oklahoma State Employee Benefits Council. Mrs. Harris [Defendant] was covered under her husband's policy from January 1, 2002 through September 1, 2002."

¶11 The Board of Health rule applies to covered members. Defendant contends she was a covered member during the dates of service, January 2000, through June 2000, and at trial testified "... she had valid insurance coverage." However, she did not offer any other evidence to support this contention. In fact, the Department of Health letter she offered into evidence states she was a covered member only from January 1, 2002, through September 1, 2002, not during the dates of service. The trial court did not err in not applying the Health Board rule to this matter.[1]

¶12 Finally, Defendant submits the trial court erred in not admitting into evidence the affidavit of Clinic's former office manager, Darlene Cornelius, pursuant to 12 O.S.2001 § 2804.1, an exception to the hearsay rule. In seeking to admit the affidavit into evidence, Defendant testified it supported her account of the events as she had just testified and would help further explain the bills she allegedly owed.[2] Apparently, Ms. Cornelius lives in Austin, Texas.

¶13 However, Defendant has not demonstrated how she has been prejudiced by exclusion of this affidavit from evidence. Defendant herself testified regarding Ms. Cornelius's statements. Admission of this affidavit would have been cumulative evi-

---

1. Defendant argues the trial court erred in not finding she was a third-party beneficiary to the contract between Clinic and her HMO. However, Defendant did not provide evidence of a contract between Clinic and her HMO. The trial court did not err in not finding Defendant was a third-party beneficiary to a contract between Clinic and her HMO.

2. Defendant testified that in June 2000, she spoke with Ms. Cornelius about her bill. She testified that together they found several errors in the bill and that Ms. Cornelius told her she would handle the errors and her bill would be taken care of.

dence, and the trial court properly denied its admission. *See* 12 O.S. § 2403.

¶ 14 There is competent evidence to support the trial court's decision. *Blackmer v. Cookson Hills Electric Co-op.*, 2000 OK CIV APP 135, 18 P.3d 381. The decision is AFFIRMED.

JOPLIN, P.J., and BUETTNER, C.J., concur.