2008 OK 4

**SOUTH TULSA CITIZENS COALITION, L.L.C.; and Tom Snider, an individual, Plaintiffs/Appellants,**

v.

**ARKANSAS RIVER BRIDGE AUTHORITY; City of Jenks; and Infrastructure Ventures, Inc., Defendants/Appellees.**

No. 104,646.

Supreme Court of Oklahoma.

Jan. 22, 2008.

**1218**

George Gibbs, Christopher Wolek, Kevin S. Hoskins, Tulsa, OK, for Plaintiffs/Appellants.

Stephen Oakley, Jenks, Oklahoma, John M. Hickey, Tulsa, OK, for Defendants/Appellees.

KAUGER, J.

¶ 1 The question presented is whether the trial court erred in granting the appellees' motion for summary judgment. We find that it did.

## FACTS

¶ 2 On February 9, 2006, appellee, the City of Jenks, Oklahoma (Jenks) entered into an agreement with appellee, Industrial Ventures, Inc. (IVI) to build a toll bridge across the Arkansas River to connect the intersection of 131st Street South and South Yale Place in Jenks on the south bank of the river to the intersection of 121st Street South and

South Yale Avenue in the City of Tulsa, Oklahoma (Tulsa) on the north bank of the river. The north connection of the bridge is not within the limits of Jenks, but it is within the limits of the Tulsa and includes a 45 acre parcel owned by Tulsa. Jenks has no existing street or roadway on the north side of the river. On February 15, 2006, appellants Tom Snider (Snider) and South Tulsa Citizens Coalition, L.L.C. (collectively, the Coalition) filed a petition in the District Court of Tulsa County seeking a declaratory judgment that: 1) Jenks violated Okla. Const. art. 18, § 5(a)[1] by improperly granting a franchise to IVI without a vote of Jenks' electors; 2) Jenks violated Okla. Const. art. 10, § 26(a)[2] by assuming a financial obligation without voter approval; 3) it was unlawful for Jenks to exercise the power of eminent domain outside its city limits; and 4) Jenks violated 61 O.S.2001 § 103(A)[3] by failing to observe proper bidding procedures. The petition also sought to enjoin the appellees from constructing the bridge. On February 21, 2006, the appellees filed a motion to dismiss.

¶ 3 On June 6, 2006, the Coalition filed an amended petition seeking the additional declaratory judgments that: 1) Jenks lacks the authority to build a toll bridge in Tulsa County under 69 O.S.2001 § 3006;[4] and 2) any taking of property to construct the bridge would violate Okla. Const. art. 2, § 23[5] as an impermissible taking for a private use.

¶ 4 In August of 2006, Jenks and the City of Bixby, Oklahoma (Bixby) created appellee, the Arkansas River Bridge Authority (ARBA), a public trust of which Jenks and Bixby are the beneficiaries. On September

---

1. See note 27, infra.

2. Okla. Const. art. 10, § 26(a) provides in pertinent part:
   Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose....

3. Title 61 O.S. Supp.2006 § 103(A) provides in pertinent part:
   Unless otherwise provided by law, all public construction contracts exceeding Fifty Thou-

sand Dollars ($50,000.00) shall be let and awarded to the lowest responsible bidder, by open competitive bidding after solicitation for sealed bids....

4. See ¶ 13, infra.

5. Okla. Const. art. 2, § 23 provides:
   No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law.

5, 2006, Jenks and IVI terminated and released the February 9th agreement, and Jenks, ARBA and IVI (collectively, appellees) entered a new agreement to build the bridge. The September 5th agreement was amended on November 6, 2006, to create the agreement at issue (Bridge Agreement).

¶ 5 The Bridge Agreement provided that Jenks would acquire all the property necessary to construct the bridge, and IVI would fund the cost of acquisition. Jenks would issue a construction permit for the north connection of the bridge directly to IVI. The agreement appears to provide that Jenks would also directly lease the property required for the north connection of the bridge to IVI, although it would receive no payments directly from IVI.[6] The property required for the south connection of the bridge, which is within the city limits of Jenks, would be leased to ARBA by Jenks for 75 years. ARBA would then sublease the property and issue a construction permit to IVI.

¶ 6 IVI was to design, construct, operate, maintain and manage the bridge at its own expense, through financing it would secure. No later than January 1, 2016, IVI was to pay ARBA 15% of the net toll revenues for

thirty years and 20% of the net toll revenues for the remainder of the lease. These payments were not to be less than $1,000,000 per year. Additionally, beginning in the eleventh year of the bridge's operation, IVI was to pay an additional 2% of the gross toll revenues into a "Replacement/Maintenance Reserve Fund" for the remainder of the lease term. At the end of the lease term, the bridge itself and the south connection would remain the property of ARBA, and the north connection would remain the property of Jenks.

¶ 7 On September 14, 2006, the Coalition filed a second amended petition seeking the further declaratory judgments that: 1) ARBA failed to comply with the requirements for public trusts found at 69 O.S.2001 § 3001 et seq.;[7] 2) the Oklahoma Transportation Administration did not determine that the proposed bridge would be self-sufficient from toll revenues within thirty years as required by 69 O.S. Supp.2006 § 1705(e)(32);[8] 3) ARBA failed to properly bid the contract for the proposed bridge according to 60 O.S. Supp.2004 § 176(H),[9] 69 O.S. Supp.2006 § 1705(n),[10] and 69 O.S.2001 § 1101(A);[11] and 4) ARBA is attempting to

---

**6.** The agreement is clear that: 1) the north connection of the bridge is not subleased to ARBA; 2) Jenks is to oversee IVI's construction of the north connection of bridge; and 3) all permanent improvements constructed on the north connection are the sole property of Jenks.

**7.** Title 69 O.S.2001 § 3001 provides in pertinent part:

Any county or combination of cities, counties or towns, by resolution of their governing boards, may jointly create a public trust for the purpose of planning, financing, constructing, maintaining and operating a toll expressway....

**8.** Title 69 O.S. Supp.2006 § 1705(e)(32) provides:

The Oklahoma Turnpike Authority is hereby authorized and empowered:
(e) To construct, maintain, repair and operate turnpike projects and highways, with their access and connecting roads, at such locations and on such routes as it shall determine to be feasible and economically sound; provided, that until specifically authorized by the Legislature, the Authority shall be authorized to construct and operate toll turnpikes only at the following locations ...
(32) A new bridge crossing the Arkansas River in the vicinity of South Yale Avenue and South

Yale Place in Tulsa County. This project shall commence upon a determination by the Oklahoma Transportation Authority that such bridge shall be self-sufficient at some point over a thirty-year time period from the toll charges associated with the bridge project....

**9.** Title 60 O.S. Supp.2004 § 176(H) provides in pertinent part:

Contracts for construction, labor, equipment, material or repairs in excess of Twenty-five Thousand Dollars ($25,000.00) shall be awarded by public trusts to the lowest and best competitive bidder....

**10.** Title 69 O.S. Supp.2006 § 1705(n) provides in pertinent part:

... All contracts for construction work on turnpike projects shall be let to the lowest responsible bidder, or bidders, after notice by publication in a newspaper published in the county where the work is to be done in two consecutive weekly issues of the newspaper....

**11.** Title 69 O.S.2001 § 1101(A) provides in pertinent part:

All contracts for construction work upon the state highway system shall be let and awarded

exercise authority outside the boundaries of Jenks or Bixby, in violation of 68 O.S. Supp. 2006 § 1370.7.[12]

¶ 8 On November 14, 2006, the appellees moved for summary judgment, and on December 20, 2006, the Honorable David L. Peterson denied the motion. Upon Judge Peterson's retirement, the Honorable Gordon D. McAllister was appointed to preside over the cause early in 2007. On January 11, 2007, the appellees filed a motion to reconsider the trial court's order denying summary judgment. On April 19, 2007, the trial court granted the appellees' motion for summary judgement, making the following findings: 1) the Bridge Agreement was not a franchise requiring voter approval; 2) the Bridge Agreement did not create any indebtedness; 3) any claims of improper use of the power of eminent domain were not ripe because Jenks had not exercised the power of eminent domain; 4) Jenks and ARBA have the power to construct a toll road in Tulsa County; 5) the Competitive Bidding Act is inapplicable to the Bridge Agreement; 6) the ARBA complied with the financing requirements for public trusts; 7) 68 O.S. Supp.2006 § 1370.7 grants ARBA the authority to build a toll bridge; and 8) the ARBA is not exercising any authority outside of the territorial limits of Jenks and Bixby. The Coalition filed its petition in error on May 17, 2007, and we retained the cause on August 13, 2007.

## ¶ 9 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE APPELLEES.

¶ 10 Summary judgment is properly granted when there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law.[13] When summary judgment involves only legal questions, the standard of review of a trial court's grant of summary judgment is *de novo*.[14]

¶ 11 This cause presents Constitutional questions and questions of statutory interpretation. The Constitution is the bulwark to which all statutes must yield.[15] In construing and applying constitutional provisions, the intent of the framers and the people adopting it must be given effect.[16] Absent an ambiguity, the intent is settled by the language of the provision itself, and the courts are not at liberty to search beyond the instrument for meaning.[17] The primary goal of statutory construction is to ascertain and follow the intent of the legislature.[18] The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole.[19]

### Neither Jenks Nor ARBA Has Authority to Build, Maintain, and Operate A Toll Bridge Outside of the Corporate Boundaries of Jenks and Bixby.

¶ 12 The appellees have argued that the agreement to build, maintain, and oper-

pursuant to the provisions of the Public Competitive Bidding Act of 1974. . . .

**12.** See ¶ 14, infra.

**13.** *Wathor v. Mut. Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559; *Oliver v. Farmers Ins. Group of Companies.*, 1997 OK 71, ¶ 6, 941 P.2d 985; *Indiana Nat. Bank v. State Dept. of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53.

**14.** *Head v. McCracken*, 2004 OK 84, ¶ 3, 102 P.3d 670; *In re. Estate of MacFarline*, 2000 OK 87, ¶ 3, 14 P.3d 551; *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051.

**15.** *In re. Assessments for the Year 2005 of Certain Real Property Owned by Askins Properties, L.L.C.*, 2007 OK 25, ¶ 12, 161 P.3d 303; *Oklahoma Elec. Co-op., Inc. v. Oklahoma Gas & Elec. Co.*, 1999 OK 35, ¶ 7, 982 P.2d 512; *Reherman v. Oklahoma Water Res. Bd.*, 1984 OK 12, ¶ 22, 679 P.2d 1296.

**16.** *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, see note 15, supra; *Hendrick v. Walters*, 1993 OK 162, ¶ 7, 865 P.2d 1232; *Boswell v. State*, 1937 OK 727, ¶ 9, 74 P.2d 940.

**17.** *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, see note 15, supra at ¶ 8, *In re. Protest Against the Tax Levy of Ardmore Indep. Sch. No. 19 for Fiscal Year 1997–1998*, 1998 OK 43, ¶ 7, 959 P.2d 580; *Boswell v. State*, see note 16, supra.

**18.** *Cooper v. State ex rel. Dept. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466; *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15; *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172.

**19.** *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 11, 33 P.3d 302; *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52; *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439.

ate a toll bridge does not constitute a franchise because ARBA is not a municipality, and possesses specific statutory authority to carry out a project of this nature. The Coalition responds that: 1) ARBA has no authority outside the corporate boundaries Jenks and Bixby under 68 O.S. Supp.2006 § 1370.7; and 2) ARBA may not authorize the construction of a toll road in Tulsa under 69 O.S.2001 § 3006 and 69 O.S.2001 § 3016. We agree with the Coalition.

¶ 13 The authority for combinations of municipalities to form public trusts for the purpose of creating a toll expressway is found at 69 O.S.2001 § 3001, in the "Roads, Bridges, and Ferries" Title of the Oklahoma Statutes, which provides in pertinent part:

Any county or combination of cities, counties or towns, by resolution of their governing boards, may jointly create a public trust for the purpose of planning, financing, constructing, maintaining and operating a toll expressway. . . . [20]

Title 69 O.S.2001 § 3006 provides:

The trustees shall negotiate a contract or contracts to accomplish the purposes enumerated in Section 1 of this act; however, prior to entering into a construction contract, **it will be necessary for the board of trustees of such trust to obtain the consent of the governing body of any county, city or town of more than one thousand (1,000) population, according to the last preceding Federal Decennial Census, in which such expressway or any part thereof may be located.** [Emphasis added.]

Title 69 O.S.2001 § 3016 provides in pertinent part:

. . . [T]he provisions of this act shall not apply to public trusts created or to be created for the purpose of financing, constructing, operating and maintaining toll expressways in counties having a population of five hundred thousand (500,000) or more, according to the latest Federal Decennial Census.

¶ 14 The authority for combinations of municipalities to form a transportation authority for the purpose of financing a toll bridge is found at 68 O.S. Supp.2006 § 1370.7, in the "Revenue and Taxation" Title of the Oklahoma Statutes, which provides in pertinent part:

(A) Any combination of cities, towns and counties, by resolution of their governing boards, may jointly create a transportation authority or regional economic development authority pursuant to the provisions of Section 176 of Title 60 of the Oklahoma Statutes [21] for the purpose of planning, financing and constructing transportation or regional economic development projects located within the boundaries of such cities, towns or counties . . . **The boundaries of the authority shall be coterminous with the boundaries of the cities, towns or counties creating the authority.**

. . .

(J) A transportation authority created pursuant to the provisions of subsection A of this section may provide for the financing of a toll bridge utilizing any revenue measures available pursuant to subsections A through I of this section in combination with revenue derived from toll charges. . . . [Emphasis added.]

The appellees urge us that ARBA is a transportation authority formed under 68 O.S. Supp.2006 § 1370.7, and the Coalition argues that ARBA is a public trust formed under 69 O.S.2001 § 3001 et seq.

¶ 15 Legislative acts are to be construed in such manner as to reconcile the different provisions, render them consistent and harmonious, and give intelligent effect to each. [22] For the purposes of this cause, we

**20.** Title 69 O.S.2001 §§ 3001–3020 were promulgated in response to *Board of County Comm'rs of Okla. County v. Oklahoma City*, 1971 OK 58, 484 P.2d 882, which held that a county may not form a public trust to construct a toll expressway.

**21.** Title 60 O.S. Supp.2004 § 176(A) provides in pertinent part:

Express trusts may be created to . . . provide funds for the furtherance and accomplishment of any authorized and proper public function of purpose of the state or any county or municipality or any and all combinations thereof . . .

**22.** *Oklahoma Ind. Petroleum Ass'n v. Youngker*, 1988 OK 146, ¶ 17, 769 P.2d 109; *Seal v. Corporation Comm'n*, 1986 OK 34, ¶ 33, 725 P.2d 278; *Abbott v. Board of Trustees of Oscar Rose Junior College*, 1978 OK 129, ¶ 7, 586 P.2d 1098.

find there is no material difference between the terms "toll expressway" and "toll bridge."[23] Title 68 O.S. Supp.2006 § 1370.7(J) is not a separate source of statutory authority to create a public trust for the purpose of constructing a toll road, but instead a statute that authorizes public trusts organized under 69 O.S.2001 § 3001 *et seq.* to use additional methods of financing a toll road. Therefore, ARBA is a public trust organized to construct a toll road.

¶ 16 However, even if we were to find ARBA to be a public trust formed under the separate authority of 68 O.S. Supp.2006 § 1370.7(J) and not subject to 69 O.S.2001 § 3001 *et seq.*, our result would not be altered. The Bridge Agreement violates both statutes. Title 69 O.S.2001 § 3006 requires a public trust to obtain the approval of the governing body of any city with a population greater than 1,000 through which the toll

expressway is to pass.[24] It is undisputed that ARBA, which was formed by Jenks and Bixby, did not seek the consent of the governing body of Tulsa—a city with a population of 382,872,[25] in which the north connection of the bridge was to be located. It is also undisputed that ARBA violates 69 O.S. 2001 § 3016, by seeking to build a toll bridge in Tulsa County, a county with a population of 563,299 at the time of the 2000 Federal Decennial Census.[26] Additionally, the Bridge Agreement's purported grant of authority to build the north connection of the bridge on property outside the boundaries of Jenks and Bixby also violates 68 O.S. Supp. 2006 § 1370.7(A).

¶ 17 The appellees apparently believe that they can avoid the foregoing requirements by the provisions in the Bridge Agreement where the ARBA grants IVI the right to build the bridge and the south connection, and Jenks grants IVI the right to build the north connection.[27] This purported division

23. The term "toll bridge" is not defined by 68 O.S. Supp.2006 § 1370.7. The term "toll expressway" is broadly defined under 69 O.S.2001 § 3011, which provides:

> For the purposes of this act, the term 'Toll Expressway' is defined to mean any toll urban or rural expressway or expressways which may consist of separate sections or segments separated by intervening highway or street connections, and which may be laid out wholly or partially within the corporate limits of any incorporated city, and the cost of construction of which has or is to be paid for by revenue bonds issued by a public trust. For the purposes of this act, the word 'municipality' includes a city, county or town.

While the proposed bridge will not be financed by bonds issued by ARBA, because 68 O.S. Supp. 2006 § 1370.7 has since provided for several additional means by which a public trust may finance a toll road, the method of financing a toll road issuing revenue bonds is no longer a necessary element of the definition.

24. Title 69 O.S.2001 § 3006, see ¶ 13, supra.

25. The United States Census Bureau estimated the population of the City of Tulsa in 2006 to be 382,872. At the time of the 2000 Census, Tulsa's population was 393,049. http://factfinder.census. gov /servlet/SAFFPopulation? event=Change-GeoContext & geo id=16000US4075000 & geo-Co ntext= & street= & county=tulsa'+ok & cityTown= tulsa'+ok & state= & zip= & lang=en & sse=on & ActiveGeoDiv= & useEV= & pctxt=fph & pgsl=010 & submenuId=populati o&ds name=null& ci nbr=null&qr name=null&reg=null:null& keyword=& industry=

26. http://factfinder.cens us.gov/servlet/SAFFPopulation? event=Search & name=tulsa+county & state=040 00US40 & county=tulsa+county & cityTown=tulsa+ county & zip= & sse=on & lang=en & pctxt=fph. The entire bridge and both approaches would be located in Tulsa County.

27. The Coalition argues that Jenks' retention of duties regarding the north connection of the proposed bridge constitutes a franchise. The term "franchise" means the right granted by the state or a municipality to an existing corporation or individual to do certain things which a corporation or individual otherwise cannot do by common right, such as the right to use the street to build structures for the purpose of conducting business *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, see note 15, supra at ¶ 10; *Oklahoma Gas & Elec. Co. v. Total Energy*, 1972 OK 108, ¶ 25, 499 P.2d 917. Okla. Const. art. 18, § 5(a) provides:

> No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years.

The purpose of Okla. Const. art. 18, § 5(a) is to give the electorate of a municipality absolute control over the granting of franchises. *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, at ¶ 8. **No statute authorizes a municipality**

of duties has no effect. As we have stated, ARBA may not exercise authority outside the boundaries of Jenks and Bixby, and Jenks has no streets or roadways on the north side of the bridge. The Bridge Agreement oversteps the authority of both Jenks and ARBA, and thus the trial court erred in granting summary judgment to the appellees.

## CONCLUSION

¶ 18 The intention of the Legislature in permitting the creation of public trusts and transportation authorities for toll road construction is that because toll roads and bridges by their nature connect various municipalities, towns, and counties, such sovereigns must consolidate their authority to construct toll roads and bridges. However, the Legislature intended that the municipalities, towns, or counties that form the public trusts or transportation authorities be the ones in which the toll road or bridge is to be constructed. If we were to adopt the appellees' arguments, what would prevent Jenks or ARBA from granting IVI the right to build a toll bridge across the Oklahoma River in Oklahoma County?

■ ¶ 19 Summary judgment is properly granted only when there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law. Neither Jenks nor ARBA is entitled to judgment as a matter of law because the north connection of the bridge does not connect streets or roadways within the City of Jenks. Therefore, the trial court erred in granting the appellees' motion for summary judgment. We reverse the order of the district court and remand with directions to grant summary judgment in favor of the Coalition.[28]

DISTRICT COURT ORDER REVERSED AND REMANDED.

**ALL JUSTICES CONCUR.**

---

of this state to grant a franchise for any purpose outside of its corporate boundaries. *Comanche County Rural Water Dist. No. 1 v. City of Lawton,* 1972 OK 117, ¶ 16, 501 P.2d 490. If we were to give effect to the north/south dichotomy in the Bridge Agreement and construe the right to build the north connection as a franchise granted by Jenks, the franchise would be unconstitutional

for several reasons, including: 1) the lack of any approval by Jenks' voters; 2) the seventy-five year lease term; and 3) the north connection's location outside Jenks' corporate boundaries.

**28.** Because we reverse the order of the trial court on these grounds, we need not address the Coalition's other claims.