Question Submitted by: The Honorable Greg Treat, State Senator, District 47
2016 OK AG 5
Decided: 05/31/2016
Oklahoma Attorney General Opinions

Cite as: 2016 OK AG 5, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask the following questions:
1. Does the fact that our State has established and supported a statewide system of public education which provides for the inclusion of persons with disabilities and compliance with applicable laws satisfy the requirements of Section 2 of Article XIII of the Oklahoma Constitution?
2. Does the fact that our State has constructed and operated a separate School for the Deaf and a School for the Blind require the State to keep the structures open and operational and allow for a separate individually-operated facility for any students with qualifying disabilities in order to maintain compliance with Section 2 of Article XIII of the Oklahoma Constitution?
¶1 Your questions involve the interpretation of Article XIII, Section 2 of the Oklahoma Constitution, which states: 

The Legislature shall provide for the establishment and support of institutions for the care and education of persons within the state who are deaf, deaf and mute, or blind.

Okla. Const. art. XIII, § 2.[1] 

¶2 Constitutional provisions are interpreted to give effect to the intent of the people who adopt them. Wilson v. Fallin, 2011 OK 76, ¶ 14, 262 P.3d 741, 746; S. Tulsa Citizens Coal., v. Ark. River Bridge Auth., 2008 OK 4, ¶ 11, 176 P.3d 1217, 1220. Article XIII, Section 2 "must be construed considering its purpose and given a practical interpretation so that the manifest purpose of the framers and the people who adopted it may be carried out." Fent v. Fallin, 2014 OK 105, ¶ 17, 345 P.3d 1113, 1117. Thus, the relevant question is whether Article XIII, Section 2 was intended to require the Legislature to establish and support institutions separate from the public schools of the State for the care and education of the deaf, deaf and mute, or blind, or whether public schools may fulfill that requirement. 

¶3 In answering your questions we must keep in mind that "[s]tatutes, (and generally Constitutions), must be construed as a consistent whole in harmony with common sense and reason and every portion thereof should be given effect if possible." Cowart v. Piper Aircraft Corp., 1983 OK 66, ¶ 4, 665 P.2d 315, 317. 
I.
The Language of Article XIII Generally--and of Article XIII, Section 2 Specifically--Contemplates the Establishment and Support of Separate Institutions to Care For and to Educate the Deaf, Deaf and Mute, and Blind. 
¶4 Reading Article XIII together as a whole, it is clear that the people who adopted the Oklahoma Constitution intended for the Legislature to support "institutions" for the deaf, deaf and mute, and blind, rather than programs and services within the public schools of the State. 
¶5 At the time of its enactment, Article XIII of the Oklahoma Constitution was comprised of seven sections, each related to education. Article XIII, Section 1 requires the Legislature to "establish and maintain a system of free public schools wherein all the children of the State may be educated." Okla. Const. art. XIII, § 1. Similar to the requirement that the Legislature "establish and maintain" a system of free public schools, Article XIII, Section 2 requires the Legislature to "establish and support" institutions for the deaf, deaf and mute, and blind. Okla. Const. art. XIII, § 2. Article XIII, Section 1 already establishes a system of free public schools. By again using the term "establish" in Section 2, the framers intended to establish and support something separate and distinct from the public schools of the State provided in Section 1. Reading "institutions" in Article XIII, Section 2 to mean "public schools" would render that provision superfluous.
¶6 Further, within the State's system of free public schools, Article XIII, Section 7 requires the Legislature to provide for the teaching of specific subjects. That provision states: "the Legislature shall provide for the teaching of the elements of agriculture, horticulture, stock feeding, and domestic science in the common schools of the State," thereby contrasting free public schools on the one hand with programs to be provided within those public schools on the other. Okla. Const. art. XIII, § 7 (emphasis added).
¶7 Contrarily, Article XIII, Section 2 does not require that a specific program be taught or service provided for the deaf, deaf and mute, and blind in the common schools of the State. Rather, it calls for the establishment and support of institutions for that purpose. Had the framers intended to require the Legislature to provide specific services or programs for deaf, deaf and mute, and blind students at public schools--and not for the care and education of those individuals at separate institutions--they would have stated so in terms more similar to Article XIII, Section 7. 
¶8 Moreover, that the word "institutions" may refer to or encompass public schools as well as entities separate and distinct from the public schools of the State does not alter this analysis. The plain and ordinary meaning of the term "institution" as used in this context is "3b: An establishment or foundation esp. of a public character . . . 3c: a building or the buildings occupied or used by such organization." Webster's Third New International Dictionary 1171 (3d ed. 1993). Thus, the framers' use of the word "institutions" connotes separate and distinct facilities designed for a particular purpose. As reflected by the prepositional phrase immediately following "institutions," that purpose is the care and education of the deaf, deaf and mute, and blind.
¶9 This conclusion is further supported by constitutional provisions outside of Article XIII. For instance, Article XXI, Section 1 requires that "[e]ducational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law." Okla. Const. art. XXI, § 1. This provision groups institutions for the benefit of the deaf, deaf and mute, and blind with other distinct institutions designed for specific purposes. In construing this provision, the Oklahoma Supreme Court has confirmed that "public schools" are not "educational institutions" as referred to in Article XXI, Section 1, but rather "the kind of 'educational institution' intended by the legislature" in that provision "is that of a state institution such as a mental health institution, school for the disabled or a center of higher education." Grimes v. City of Okla. City, 2002 OK 47, ¶ 16, 49 P.3d 719, 725. The Supreme Court's interpretation of "educational institutions" as used in Article XXI, Section 1 thus confirms that when the framers of the Constitution required support of "institutions for the care and education" of deaf, deaf and mute, and blind students, they were referring to something distinct from the public schools of the State. 
¶10 Based on the language of Article XIII, Section 2 and the surrounding constitutional provisions, the framers' intended the Legislature to establish and support institutions distinct from the public schools of the State for the care and education of the deaf, deaf and mute, and blind. Giving the word "institution" its most plain and ordinary meaning, and one that doesn't render other provisions duplicative or superfluous, Article XIII, Section 2 requires the Legislature to provide support of established organizations or facilities rather than services or programs. 

II.
The Historical Context of Article XIII, Section 2 Confirms This Conclusion
¶11 We need not look beyond the plain text to discern the meaning of Article XIII, Section 2. However, even if we were to find this provision ambiguous, the historical context and interpretation of similar provisions in other States supports our conclusion. See St. John Med. Ctr. v. Bilby, 2007 OK 37, 160 P.3d 978 (reviewing the history of the Workers' Compensation Act to understand legislative intent). 
A. The History of the Oklahoma School for the Deaf and Oklahoma School for the Blind
¶12 Specialized schools for the education of the deaf, deaf and mute, and blind have existed in this region since 1897. In that year, Laura A. Lowrey established the first school for the blind in what was at the time Indian Territory. See Sec'y of State Benjamin Harrison, Oklahoma Red Book, Vol. 2, 198 (1913). It is our understanding that soon after its creation, the school began accepting both deaf and blind students until a separate school for the deaf was created in 1898. The Oklahoma School for the Blind, known initially as the "Laura A. Lowery School for the Blind," has received both private and public funds, including funds from the Cherokee and Choctaw Nations, since its founding. Id.; see also Okla. Terr. Sess. Laws ch. 30, § 1 (1895). 
¶13 Thus, at the time of the Oklahoma Constitutional Convention, separate schools for the deaf and for the blind existed in the Oklahoma Territory. In fact, it was the general practice across the nation for deaf, deaf and mute, and blind students to receive their care and education in facilities separate from public schools. These facilities emphasized teaching deaf, deaf and mute, and blind students essential life skills tailored to the needs of deaf and blind individuals, which was often unavailable in the public school system. The text of Article XIII, Section 2 itself recognizes this general practice by requiring the Legislature to establish and support "institutions for the care and education of persons" that are deaf, deaf and mute, and blind. See Okla. Const. art. XIII, § 2. 
¶14 Public support of the Laura A. Lowery School for the Blind continued upon statehood. The First Legislature of the State of Oklahoma appropriated $5,000 for maintenance of the school and placed the school under the control of the State Board of Education. 1908 Okla. Sess. Laws ch. 67, § 5801. The 1907 appropriation was to be "expended by the Board of Education of the State for the maintenance of said institution until such time as the Legislature may locate the State School for the Blind." Id. (emphasis added). This law thus anticipated that a "State School for the Blind," i.e., a separate institution, would be located. 
¶15 Indeed, the year following Oklahoma's entry into the Union, the Oklahoma School for the Deaf was officially established in Sulphur, Oklahoma. See Sec'y of State Benjamin Harrison, Oklahoma Red Book, Vol. 2, 196 (1913); see also 1908 Okla. Sess. Laws ch. 67, § 5802. 
¶16 In short, because separate schools for the deaf and blind pre-date the Oklahoma Constitutional Convention and were supported by public funds at the time of the Convention, Article XIII, Section 2 is best read to refer to separate institutions distinct from the public schools of the State.

B. Other States' Similar Provisions 
¶17 When Oklahoma's constitutional provisions are identical with or similar to those of other states, "it will be presumed that the framers of the constitution were conversant with, and designed to adopt, the construction previously placed on such provision in other states." Wimberly v. Deacon, 1943 OK 432, ¶ 13, 144 P.2d 447, 450. Article XIII, Section 2 of the Oklahoma Constitution was based on provisions of the Arkansas, Michigan, and Mississippi Constitutions. See R.L. Williams, The Constitution and Enabling Act of the State of Oklahoma at 161 (1912 Kansas City, MO). Case law and other authorities suggest that these States understand their provisions to require the support of separate institutions.
¶18 Article XIX, Section 19 of the Arkansas Constitution states: "It shall be the duty of the General Assembly to provide by law for the support of institutions for the education of the deaf and dumb, and of the blind; and also for the treatment of the insane." Ark. Const. art. XIX, § 19. Both the Arkansas Supreme Court and the Arkansas Attorney General have indicated that this provision compels separate institutions for the education of these individuals.
¶19 In the case of Lucas v. Futrall, the Arkansas Supreme Court examined whether the office of superintendent of the Arkansas School for the Blind was a public office. Lucas v. Futrall, 84 Ark. 540, 106 S.W. 667, 670 (1907). That court determined that "[t]he duties to be performed [were] of a public nature, being the control of one of the eleemosynary institutions of the state, which was established and is maintained in obedience to constitutional mandate." Id. (emphasis added). Likewise, in a 2008 Opinion, the Arkansas Attorney General opined on whether the Arkansas School for the Deaf and the Arkansas School for the Blind were "free public schools" within the meaning of Article XIV, Section 1 of Arkansas's Constitution and whether the State must provide funding to ensure a substantially equal opportunity for adequate education under Arkansas law. The Honorable Steve Faris, Ark. Op. Atty. Gen. No. 2008-168. In answering those questions, the Arkansas Attorney General stated that "as a matter of constitutional law independent of Article XIV--namely, the provisions of Article XIX, § 19--I believe that the state is obliged to provide these two constitutionally required schools with adequate facilities." Id. (emphasis added). 
¶20 Similarly, at the time the Oklahoma Constitution was adopted, the Michigan Constitution stated: "Institutions for the benefit of those inhabitants who are deaf, dumb, blind, feeble-minded or insane shall always be fostered and supported." Mich. Const. art XIII, § 10 (1850).
[2] The Michigan Constitution was amended in 1963, and at that time Article XIII, Section 10 was renumbered to Article VIII, Section 8, which reads: "Institutions, programs and services for the care, treatment, education, or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously disabled shall always be fostered and supported." Mich. Const. art. VIII, § 8 (West 1963). In describing the changes made to that provision, the Michigan Constitutional Convention commented: "[t]he revised section recognizes that the present constitutional language is not only too restrictive in scope but in certain cases has been outmoded by recent developments in the field of physical and mental rehabilitation. The words 'programs and services' are added as broader concepts not necessarily confined to institutional treatment." Mich. Const. art. VIII, § 8, Convention Comment (West).
¶21 In amending that provision, the Convention explicitly stated that the addition of the words "programs and services" was intended to broaden the scope of that provision to include concepts outside the context of institutional treatment. Mich. Const. art. VIII, § 8, Convention Comment (West). The need for "broader concepts not necessarily confined to institutional treatment" would only exist if that mandate were confined to institutional treatment in the first place. Based upon the Convention's expansion of this provision, it is clear that the original interpretation assumed separate institutions designed for the care and education of those who are deaf, deaf and mute, and blind. 
¶22 Both the Arkansas and Michigan Constitutions have been assumed to require separate institutions for the education of the deaf, deaf and mute, and blind in their States.
[3] Because Article XIII, Section 2 of Oklahoma's Constitution is based on those provisions, we find these provisions and the related authority persuasive and infer the same intent.
¶23 Because we find that Article XIII, Section 2 requires the Legislature to establish and support separate institutions for the education of the deaf, deaf and mute, and blind within the State, we similarly find that Article XIII, Section 2 requires the Legislature to continue to provide for institutions for the care and education of the deaf, deaf and mute, and blind.

¶24 It is therefore the official Opinion of the Attorney General that: 
1. The establishment and support of a statewide system of public education which provides for the inclusion of persons with disabilities does not satisfy the requirements of Article XIII, Section 2 of the Oklahoma Constitution.
2. Article XIII, Section 2 of the Oklahoma Constitution requires the Legislature to establish and support institutions for the care and education of the deaf, deaf and mute, and blind children of the State distinct from the public schools.

E. SCOTT PRUITT
Attorney General of Oklahoma
Sarah Greenwalt
Assistant Solicitor General

FOOTNOTES
[1] Article XIII, Section 2 was amended in 1976 in a manner irrelevant to this analysis. 
[2] The Michigan Constitution of 1850 is available at: http://www.legislature.mi.gov/(S(z4ajc0n22brk42l5pqnmqdkf))/documents/historical/miconstitution1850.htm. The Michigan Constitution was amended in 1908, and this provision was moved to Mi. Const. art. XI, § 15 (1908). The Michigan Constitution of 1908 as amended is available here:
http://www.legislature.mi.gov/(S(uzslf0q50my2kyrxyf12dawm))/documents/historical/miconstitution1908.htm 
[3] There is no authority regarding the interpretation of Mississippi's analogous constitutional provision, which states: "It shall be the duty of the Legislature to provide by law for the support of institutions for the education of the deaf, dumb, and blind." Miss. Const. art. VIII, § 209. 

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2002 OK 47, 49 P.3d 719, 
GRIMES v. OKLAHOMA CITY
Discussed

 
2007 OK 37, 160 P.3d 978, 
ST. JOHN MEDICAL CENTER v. BILBY
Discussed

 
2008 OK 4, 176 P.3d 1217, 
SOUTH TULSA CITIZENS COALITION L.L.C. v. ARKANSAS RIVER BRIDGE AUTHORITY
Discussed

 
2011 OK 76, 262 P.3d 741, 
WILSON v. FALLIN
Discussed

 
2014 OK 105, 345 P.3d 1113, 
FENT v. FALLIN
Discussed

 
1943 OK 432, 144 P.2d 447, 195 Okla. 561, 
WIMBERLY v. DEACON
Discussed

 
1983 OK 66, 665 P.2d 315, 
Cowart v. Piper Aircraft Corp.
Discussed