OKLA. QUARTER HORSE RACING ASSOC. v. OKLA. HORSE RACING COMMISSION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:OKLA. QUARTER HORSE RACING ASSOC. v. OKLA. HORSE RACING COMMISSION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLA. QUARTER HORSE RACING ASSOC. v. OKLA. HORSE RACING COMMISSION
2020 OK CIV APP 32
Case Number: 118147
Decided: 03/24/2020
Mandate Issued: 06/17/2020
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2020 OK CIV APP 32, __ P.3d __

 

OKLAHOMA QUARTER HORSE RACING ASSOCIATION, Plaintiff/Appellant,
v.
OKLAHOMA HORSE RACING COMMISSION, Defendant/Appellee,
and
THOROUGHBRED RACING ASSOCIATION OF OKLAHOMA, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Joseph H. Bocock, BOCOCK LAW, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant

James W. Rucker, Wendi K. Morse, OKLAHOMA DEPARTMENT OF AGRICULTURE, FOOD AND FORESTRY, Oklahoma City, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Oklahoma Quarter Horse Racing Association (OQHRA) appeals from an order of the district court dismissing its petition for judicial review of a final agency order. Based on our review, we reverse and remand for further proceedings.

BACKGROUND

¶2 In its petition, OQHRA requests judicial review of a "Declaratory Ruling" of the Oklahoma Horse Racing Commission (the Commission) determining, as described by OQHRA, the "distribution of proceeds from Breakage and Unclaimed Ticket Proceeds during non-race days."[1] OQHRA asserts in its petition that the Commission's determinations in its Declaratory Ruling fail to comply with certain statutes and regulations. Among other things, OQHRA asserts the Commission's determination that the distribution of certain breakage and unclaimed ticket proceeds[2] "shall be split ninety percent Thoroughbred and ten percent Quarter Horse, Paints, and Appaloosas at Remington Park and Will Rogers Downs," constitutes an improper departure from the division of these proceeds established by regulation in 2010.

¶3 The Commission filed a special entry of appearance and motion to dismiss in the district court,[3] asserting OQHRA failed to comply with a requirement set forth in § 318(C) of the Oklahoma Administrative Procedures Act (OAPA), 75 O.S. 2011 §§ 250-323. Section 318(C) provides, in pertinent part, that "[c]opies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition." 75 O.S. 2011 § 318(C).

¶4 Although a copy of the petition, which was filed in the district court on March 18, 2019, was sent to the Commission by certified mail placed in the mailbox on March 27 -- nine days after the filing of the petition[4] -- the Commission asserts the legislative intent of § 318(C) "requires that a Petition for Judicial
review . . . be served either in person or by mail and that proof of such service be filed with the Court within 10 days of the filing of the Petition." The Commission asserts that, although mailing occurred within ten days of the filing of the petition, because it is undisputed that proof of service -- here, the certified mail receipt -- was filed by OQHRA in the district court more than ten days after the filing of the petition, on April 3, 2019, the petition should be dismissed due to a lack of compliance with § 318(C), a lack of compliance which the Commission further asserts deprived the district court of jurisdiction.

¶5 In response, OQHRA asserts proof of mailing was filed in the district court more than ten days after the filing of the petition merely "because the post office [had not sent] us the card yet" -- referring to the certified mail receipt. OQHRA asserts

the return receipt was served Thursday, March 28 or Friday, March 29 (the receipt is undated). The receipt would likely not be in the hands of counsel until Monday, April 1 or Tuesday, April 2. The return of service was filed [in the district court on] April 3, 2019.

¶6 At the hearing on the motion to dismiss, counsel for OQHRA described the Commission's interpretation of § 318(C) as "odd" because OQHRA timely mailed a copy of the petition to the Commission, yet it would have been impossible for OQHRA to comply with the Commission's reading of § 318(C) even if OQHRA had filed proof of service on the earliest possible date. Counsel for OQHRA stated at the hearing that § 318(C) "gives you ten days to mail it -- and it doesn't say serve it. It says mail it. Okay? -- then you have ten days to mail it." Counsel for OQHRA further asserted that, regardless, "it's a procedural matter; it's not a [jurisdictional] matter."

¶7 The district court, relying on Williams v. Board of Oklahoma Polygraph Examiners, 2010 OK CIV APP 100, 241 P.3d 654, cert. denied, and the two Oklahoma Court of Civil Appeals decisions cited in Williams,[5] agreed with the Commission. In its order, the district court determined that § 318(C) "requires that copies of the petition for judicial review filed in conformity with the [OAPA] be served either in person or by mail and that proof of such service be filed in the court within ten (10) days after the filing of the petition." The court further stated: "While the statute appears to be draconian, the failure to file the return of service within 10 days of the filing of the Petition deprives the trial court of jurisdiction."

¶8 OQHRA appealed and, during the pendency of this appeal, the Oklahoma Supreme Court entered orders denying OQHRA's motion to retain this appeal in the Supreme Court and stating that this case shall proceed as an accelerated appeal pursuant to Rule 1.36 of the Oklahoma Supreme Court Rules.[6]

STANDARD OF REVIEW

¶9 "When reviewing a trial court's dismissal of an action an appellate court examines the issues de novo." Rogers v. QuikTrip Corp., 2010 OK 3, ¶ 4, 230 P.3d 853 (footnote omitted). In particular, the issues presented on this appeal are issues of statutory interpretation. See Samman v. Multiple Injury Tr. Fund, 2001 OK 71, ¶ 8, 33 P.3d 302 (Statutory interpretation "demands a de novo review standard" pursuant to which this Court "has plenary, independent and non-deferential authority to examine a trial court's legal rulings." (footnotes omitted)).

ANALYSIS

¶10 In the case relied upon by the district court -- Williams v. Board of Oklahoma Polygraph Examiners, 2010 OK CIV APP 100, 241 P.3d 654 -- this Court was confronted with an earlier version of § 318(C), and we construed that version as requiring service to be accomplished, and proof of service to be filed in the district court, within ten days of the filing of the petition. We further concluded that these requirements are jurisdictional.

¶11 The operative facts in Williams are nearly identical to those in the present case. The plaintiff in Williams filed a petition for judicial review on April 20, 2009.[7] Ten days later, he "filed a document entitled Notice of Pending Service" stating that to the extent he was

required [under § 318(C)] to serve [the defendant] and file proof of such service within ten days after the filing of the petition, . . . he could not timely meet [these requirements] because he attempted to effect service on [the defendant] via certified mail return receipt requested, but ha[d] not yet received the return receipt back from the post office reflecting service.

Williams, ¶ 3 (internal quotation marks omitted).

¶12 Despite the filing of this notice, and despite the plaintiff "subsequently fil[ing] a notice of service on May 5, 2009,[8] confirming service on [the defendant]" obtained via certified mail on Friday, May 1, 2009 -- i.e., eleven days after the filing of the petition -- the Williams Court concluded that the plaintiff's failure to effect and file proof of service within ten days of the filing of the petition prevented the district court from having subject matter jurisdiction. Thus, the Williams Court concluded the district court properly dismissed the plaintiff's petition for judicial review.

¶13 We are not persuaded that the construction of § 318(C) in Williams applies to the present case. As indicated above, the Williams Court was confronted with an earlier version of § 318(C) which required that "proof of service" be filed in the district court within ten days of the filing of the petition for judicial review. That is, the version of § 318(C) applicable to the circumstances in Williams provided, in part, that "[c]opies of the petition shall be served upon the agency and all other parties of record, and proof of such service shall be filed in the court within ten (10) days after the filing of the petition." 75 O.S. 2001 § 318(C) (emphasis added). Approximately one year after mandate issued in Williams, § 318(C) was amended by the Legislature. As quoted above, § 318(C) now states that "[c]opies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition." 75 O.S. 2011 § 318(C) (emphasis added).

¶14 Our "primary goal" when interpreting a statute is "to ascertain and follow the intention of the Legislature." City of Tulsa v. State ex rel. Pub. Employees Relations Bd., 1998 OK 92, ¶ 14, 967 P.2d 1214.

By amending a statute the legislature may have intended (a) to change existing law or (b) to clarify ambiguous law. Its precise intent is ascertained by looking to the circumstances that surround the change. If the earlier statute definitely expressed an intent or had been judicially interpreted, the Legislature's amendment is presumed to have changed an existing law, but if the meaning of the earlier statute was in doubt, or where uncertainty as to the law's meaning did exist, a presumption arises that the amendment was designed to more clearly express the legislative intent that was left indefinite by the earlier text

Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, 1998 OK 113, ¶ 15 n.18, 980 P.2d 109 (citation omitted).

¶15 The result reached in Williams, although consistent with the language found in the earlier version of § 318(C), was harsh, especially when viewed in light of the first sentence of 75 O.S. § 318, which provides, in emphatic language, that "[a]ny party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title." 75 O.S. 2011 § 318(A)(1). By removing the words served and service from § 318(C), and replacing them with delivered in person or mailed, we presume the Legislature was aware of, and responding to, the interpretation of § 318(C) set forth in Williams. "When ascertaining legislative intent the Court must presume that when adopting the amendment, the legislature had knowledge of the law as it previously existed and had in mind the judicial construction which had been placed on that law." Prettyman v. Halliburton Co., 1992 OK 63, ¶ 21, 841 P.2d 573 (citations omitted). "The old law should be considered, the evils arising under it, and the remedy provided by the amendment, and that construction of the amended act should be adopted which will best repress the evils and advance the remedy." Poafpybitty v. Skelly Oil Co., 1964 OK 162, ¶ 14, 394 P.2d 515 (emphasis omitted) (citation omitted).

¶16 Following Williams, an inconsistency existed between the general intent set forth in § 318(A)(1), and the stringent requirements of § 318(C) which, in Williams, deprived the plaintiff of his § 318(A)(1) "entitle[ment] to certain, speedy, adequate and complete judicial review" of an agency's decision despite prompt mailing of the petition by certified mail. Indeed, as the circumstances in both Williams and the present case reveal, the ability to comply with the interpretation of § 318(C) adopted in Williams can be rendered impossible by circumstances substantially outside the control of a plaintiff who has chosen to accomplish service by mail.

¶17 Given the text, as well as the context, of the amendment to § 318(C), we conclude that the Legislature intended to remove the requirement that service occur within ten days and chose, instead, to replace it with less stringent requirements. Pertinent to the present case, § 318(C) requires that "[c]opies of the petition shall be . . . mailed, postage prepaid," within ten days.

¶18 Furthermore, although we agree with the Commission that the current version § 318(C) sets forth in mandatory language that the plaintiff also file "proof of such . . . mailing" in the district court, this requirement must also be contrasted with the earlier version of § 318(C) in order to effectuate the intent of the Legislature. As explained above, service itself need no longer occur within ten days as it did under the older version of § 318(C). Accordingly, where a party chooses, as in the present case, to satisfy the requirement of filing proof of mailing in the district court by filing a certified mail receipt, it would be absurd to require that this filing occur within ten days of the filing of the petition. Were we to interpret § 318(C) in such a manner, the Legislature's amendment to § 318(C) would be rendered vain and useless. "The Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded." AMF Tubescope Co. v. Hatchel, 1976 OK 14, ¶ 21, 547 P.2d 374 (citation omitted). "[T]he Legislature is never presumed to have done a vain and useless thing." Bryant v. Comm'r of the Dep't of Pub. Safety, 1996 OK 134, ¶ 11, 937 P.2d 496 (footnote omitted).

¶19 It must also be observed that not only has the Legislature set forth in emphatic terms in § 318(A)(1) that parties aggrieved by a final agency order are entitled to certain, speedy, adequate and complete judicial review, but the Legislature has also set forth in a separate provision -- § 318(B)(2) -- the requirements necessary in order for such a review proceeding to be "instituted" under the OAPA:

[P]roceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

75 O.S. 2011 § 318(B)(2) (emphasis added). See Rogers v. QuikTrip Corp., 2010 OK 3, ¶ 11 ("When possible, different provisions must be construed together to effect a harmonious whole and give intelligent effect to each."); S. Tulsa Citizens Coal., L.L.C. v. Ark. River Bridge Auth., 2008 OK 4, ¶ 15, 176 P.3d 1217 ("Legislative acts are to be construed in such manner as to reconcile the different provisions, render them consistent and harmonious, and give intelligent effect to each." (footnote omitted)).

¶20 There is no dispute that OQHRA complied with the requirements set forth in § 318(B)(2). Consequently, the review proceeding was properly "instituted" in the district court under § 318. Moreover, with regard to the separate requirements of § 318(C), there is no dispute that OQHRA mailed copies of the petition within ten days as required by the current version of § 318(C), and that OQHRA then promptly filed the certified mail receipt in the district court. Although this filing in the district court was accomplished more than ten days after the filing of the petition, we decline to interpret the current version of § 318(C) in a manner that would render the Legislature's amendment to that provision futile. Indeed, as stated above, the facts of the present case pertinent to the requirements of § 318(C) are nearly identical to those presented in Williams.[9] Were we to reach the same result as was reached in that case, we would fail to give effect to the intent of the Legislature in amending § 318(C). See City of Tulsa, 1998 OK 92, ¶ 18 ("[I]t is the duty of a court to give effect to legislative acts, not to amend, repeal or circumvent them." (citation omitted)). We, therefore, conclude OQHRA complied with the requirements of 75 O.S. 2011 § 318(C).[10]

CONCLUSION

¶21 We conclude OQHRA complied with the applicable version of § 318(C). Therefore, we reverse the district court's order sustaining the Commission's motion to dismiss, and we remand this case to the district court for further proceedings.

¶22 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., and FISCHER, J., concur.

FOOTNOTES

[1] The Commission sets forth the following background events in its Declaratory Ruling:

1. In January of 2017, the Commission became aware of a controversy involving the distribution of breakage and unclaimed ticket proceeds generated outside live race meets and a related disagreement between horsemen's representative associations.

2. Between January and April 2017, legal counsel for the Commission communicated with interested horsemen's representative associations and their attorneys in an attempt to clarify or resolve the controversy and disagreement. The attempt at resolution was unsuccessful.

3. The Commission invited the horsemen's representative associations to submit briefs and present oral arguments on the subject of breakage to the Commission at the Commission's regular meeting on May 18, 2017.

4. The Commission issued a Declaratory Ruling dated June 27, 2017[,] formalizing its unanimous decision at the May 18, 2017 regular meeting of the [Commission]. That Declaratory Ruling determined that the distribution to be used is ninety (90) percent Thoroughbred and ten (10) percent Quarter Horse, Paints and Appaloosas with further distribution to be on a pro rata basis by using a per breed ratio based upon the number of races per breed specified in the race track's current Organization License Order.

5. On October 30, 2018[,] the Commission's June 27, 2017 Declaratory Ruling was voided by Order of the District Court of Oklahoma County . . . . The Court's narrow ruling, filed December 4, 2018, found that the Commission's Declaratory Ruling should be voided due to the failure of the record to reflect the disclosure of the interest of one of the commissioners in a party to the proceeding which the Court determined was in violation of the Oklahoma Code of Judicial Conduct . . . .

In the Declaratory Ruling, the Commission further explains that the matter was scheduled for reconsideration in January 2019, and that, upon reconsideration, the Commission determined as follows:

[D]istribution of breakage and unclaimed ticket proceeds generated outside of a race meeting and designated for use as purse supplement and awards shall be split ninety percent Thoroughbred and ten percent Quarter Horse, Paints, and Appaloosas at Remington Park and Will Rogers Downs and 42 percent Thoroughbred, 42 percent Quarter Horse and 16 percent Paints and Appaloosas at Fair Meadows Tulsa [effective as of January 1, 2011].

[2] The proceeds in question are articulated in the Declaratory Ruling as including only "breakage and unclaimed ticket proceeds generated outside live race meets."

[3] We note that Defendant Thoroughbred Racing Association of Oklahoma was dismissed from this case.

[4] Counsel for the Commission acknowledged at the hearing on the motion to dismiss that "this was mailed on the 27th, again according to the USPS tracking. That's one or two days before the drop-dead date . . . ." See also R. Tab 5, p. 3 ("The Certified mail was sent March 27th . . . ."). Rules pertaining to the computation of time are set forth in the OAPA as follows:

In computing any period of time prescribed or allowed by the [OAPA], the day of the act, or event, from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday as defined by the Oklahoma Statutes or any other day when the receiving office does not remain open for public business until 4:00 p.m., in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday as defined by the Oklahoma Statutes, or any other day when the receiving office does not remain open for public business until 4:00 p.m. . . .

[5] In reaching its conclusion, the Williams Court relied upon two decisions of the Oklahoma Court of Civil Appeals, Oklahoma Foundation for Medical Quality v. Department of Central Services, 2008 OK CIV APP 30, 180 P.3d 1, cert. denied, and Klopfenstein v. Oklahoma Department of Human Services, 2008 OK CIV APP 16, 177 P.3d 594, but did not rely on any decisions of the Oklahoma Supreme Court. According to the parties in the present case, the Oklahoma Supreme Court has not yet addressed issues directly pertaining to the appropriate construction of § 318(C).

[6] Appeals assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, stand submitted without appellate briefing.

[7] The plaintiff in Williams sought review of a decision of the Board of Oklahoma Polygraph Examiners.

[8] Proof of service was filed in Williams fifteen days after the filing of the petition. In the present case, proof of service was filed sixteen days after the filing of the petition.

[9] In fact, in the present case it is possible that service occurred within ten days, whereas in Williams service occurred on the eleventh day. As quoted above, according to OQHRA, "the return receipt was served Thursday, March 28 [i.e., on the tenth day following the filing of the petition] or Friday, March 29 (the receipt is undated)."

[10] Having reached this conclusion, we need not address the issue of whether the current version of § 318(C) should be given the "jurisdictional brand," see Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011), such that, in a case properly "instituted" under § 318, failure to comply with the requirements set forth in § 318(C) -- requirements which appear to pertain solely to notice -- would nevertheless deprive a district court of subject matter jurisdiction. We are compelled to note, however, that such a conclusion would potentially lead to drastic consequences and the waste of judicial resources "[s]ince subject matter jurisdiction . . . cannot be waived by the parties or conferred upon the court by their consent and it may be challenged at any time in the course of the proceedings." In re A.N.O., 2004 OK 33, ¶ 9, 91 P.3d 646 (citations omitted). Such a conclusion, in order to be proper, would need to be consistent with the intent of the Legislature as expressed in § 318 construed as a consistent whole. Cf. Henderson, 562 U.S. at 435 ("Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term"; thus, even if a rule is "important and mandatory," it "should not be given the jurisdictional brand" such that a lack of compliance results in a lack of subject-matter jurisdiction unless there is "'clear' indication that [the lawmaking body] wanted the rule to be 'jurisdictional.'" (citation omitted)).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2008 OK CIV APP 16, 177 P.3d 594, KLOPFENSTEIN v. OKLAHOMA DEPT. OF HUMAN SERVICES
Discussed
 2008 OK CIV APP 30, 180 P.3d 1, OKLAHOMA FOUNDATION FOR MEDICAL QUALITY v. DEPARTMENT OF CENTRAL SERVICES
Discussed
 2010 OK CIV APP 100, 241 P.3d 654, WILLIAMS v. BOARD OF OKLAHOMA POLYGRAPH EXAMINERS
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 63, 841 P.2d 573, 63 OBJ 1359, Prettyman v. Halliburton Co.
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1964 OK 162, 394 P.2d 515, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 2004 OK 33, 91 P.3d 646, IN RE: A.N.O., A MINOR CHILD
Discussed
 2008 OK 4, 176 P.3d 1217, SOUTH TULSA CITIZENS COALITION L.L.C. v. ARKANSAS RIVER BRIDGE AUTHORITY
Discussed
 1996 OK 134, 937 P.2d 496, 68 OBJ 25, Bryant v. Commissioner of Dept. of Public Safety
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed at Length
 1976 OK 14, 547 P.2d 374, AMF TUBESCOPE COMPANY v. HATCHEL
Discussed
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed at Length
 1998 OK 113, 980 P.2d 109, 69 OBJ 4068, Polymer Fabricating, Inc. v. Employers Workers' Compensation Association
Discussed
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 318, Judicial Review
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA